# APPENDIX A

5 of 5 DOCUMENTS

Copyright 2007 EDGAR Online, Inc.
EDGAR Online

ASTA FUNDING INC

**EXHIBIT TYPE: EXHIBIT 10 - Material Contracts**

**FILING DATE: February 9, 2007**

\* \* \* \* \* \* \* \* \* \* **COMPANY INFORMATION** \* \* \* \* \* \* \* \* \* \*

**SIC CODES:**
6153 - Short-term business credit
**INDUSTRY TYPE:** Misc. Financial Services
**SECTOR ID:** Financial

\* \* \* \* \* \* \* \* \* \* **CONTENTS** \* \* \* \* \* \* \* \* \* \*

Retrieve All - Form and Exhibits
Retrieve Filing

\* \* \* \* \* \* \* \* \* \* **TEXT** \* \* \* \* \* \* \* \* \* \*

Exhibit 10.1 PURCHASE AND SALE AGREEMENT This Purchase and Sale Agreement (the "Agreement") is made as of February 5, 2007, between GREAT SENECA FINANCIAL CORPORATION, PLATINUM FINANCIAL SERVICES CORPORATION, MONARCH CAPITAL CORPORATION, COLONIAL CREDIT CORPORATION, CENTURION CAPITAL CORPORATION, SAGE FINANCIAL CORPORATION and HAWKER FINANCIAL CORPORATION (collectively, the "Sellers," and each a "Seller"), corporations under the laws of the State of Maryland, located at 700 King Farm Blvd., Rockville, Maryland 20850 and PALISADES ACQUISITION XV, LLC ("Buyer"), a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. WHEREAS, the Sellers desire to sell and Buyer desires to purchase certain of the Accounts on the terms and conditions hereinafter provided: NOW, THEREFORE, in consideration of the mutual promises herein, Buyer and Sellers agree as follows:

| | |
|---|---|
| 1. | DEFINITIONS |
| 1.1 | " Account Document(s) " means, with respect to any Account, any application, agreement, billing statement, notice, correspondence or other information in the Sellers' possession that relates to an Account. An Account Document may include, without limitation, original documents or copies thereof, whether by photocopy, microfiche, microfilm or other reproduction process. |
| 1.2 | " Account(s) " means those credit card and other consumer installment credit agreement accounts and receivables (including, without limitation, judgments) listed on the Asset Schedule (attached hereto as Exhibit 1) with outstanding balances of $6,912,428,982.00 which are subject to adjustment as of the Cutoff Date (as defined below) in accordance with Section 2.2. |
| 1.3 | " Affiliate " means, when used with reference to a specified Person, any other Person who directly controls, is controlled by, or is under common control with, the specified Person. For purposes of this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person that is a corporation, limited liability company, partnership, trust, or other entity, whether through ownership of voting securities or interests, by contract, or otherwise.. |
| 1.4 | " Closing Date " means Friday, February 16, 2007, or such other date mutually agreed to by Buyer and the Sellers provided that Buyer shall have the continuing right to postpone the Closing Date until a date on or before March 31, 2007. |
| 1.5 | " Cutoff Date " means 8 PM Friday, February 2, 2007, provided that if the Closing does not occur until after March 5, 2007 as a result of Buyer's decision to postpone the Closing Date and due to no fault of Seller, the Cutoff Date shall be deemed to be the Closing Date . |
| 1.6 | " Cutoff File " means the electronic file containing the file of the Accounts actually purchased by Buyer on the Closing Date reflecting activity as of the Cutoff Date. |
| 1.7 | " Debtor " means the person or persons in whose name(s) an Account was established. |
| 1.8 | " Diligence File " means the electronic file containing information relating to Seller's accounts delivered by, or on behalf of, Sellers to Buyer on, or about, January 25, 2007. |
| 1.9 | " Litigation " means any action, proceeding, claim, lawsuit, arbitration, audit, hearing, or investigation commenced, brought, conducted, or threatened by or before, or otherwise involving, any governmental authority or any third party, other than any routine collection action instituted by, or on behalf of, a Seller or any action instituted to execute a lien against the assets of a Debtor. |
| 1.10 | " Person " means any individual, corporation, partnership, joint venture, limited liability company, trust, governmental authority, or other entity. |
| 1.11 | " Purchase Price " means $300,000,000.00, subject to Pre-Closing Adjustment pursuant to Section 2.2. |
| 1.12 | " Purchase Price Percentage " means that percentage obtained when the Purchase Price is divided by the total outstanding Account balances as of the Cutoff Date. |
| 1.13 | " Sellers' Knowledge " means the actual knowledge, without investigation, of any Seller, its Affiliates, agents or representatives. |
| 2. | PURCHASE AND SALE OF ACCOUNTS |
| 2.1 | Purchase and Sale . On the basis of, and subject to, the representations, warranties and covenants of the Buyer contained in this Agreement, the Sellers agree to sell, assign and transfer to Buyer, and Buyer agrees to purchase from the Sellers, on the Closing Date all right, title and interest of Sellers in the Accounts. Buyer has made an independent investigation, as it deems necessary, as to the nature, validity, collectibility, enforceability and value of the Accounts, and as to all other facts that Buyer deems material to Buyer's purchase. Buyer enters into this Agreement solely on the basis of that investigation and Buyer's own judgment. Buyer has made an independent determination that |

the Purchase Price represents the Accounts' fair and reasonable value. Buyer acknowledges that the sale and assignment are without warranty of any kind; including, without limitation, warranties pertaining to validity, collectibility, accuracy or sufficiency of information, except as stated in Article 3 below; and is without recourse to the Sellers except as

2

specifically set forth within the Agreement. Buyer further acknowledges that it is not acting in reliance on any representation by the Sellers, except as set forth in Article 3 below.

2.2        Pre-Closing Adjustment . The Purchase Price amount stated in Section 1.6 shall be adjusted as follows:

The Sellers shall prepare a final statement of Accounts as of the Cut Off Date ( the "Closing Statement"). The Sellers may retain any Account if (i) the Sellers determine, in their sole discretion, that as of the Cut Off Date the representations set forth in Section 3.3 are not true and correct with respect to such Account; or (ii) the Sellers determine, in their sole discretion, that there is a pending or threatened suit, arbitration, bankruptcy proceeding or other legal proceeding or investigation relating to such Account, or the Debtor of such Account, naming the Sellers or otherwise involving the Sellers' interest therein in a manner unacceptable to the Sellers, or the Sellers otherwise determine, in their sole discretion, that such matter cannot be resolved and/or that the Sellers' interest therein cannot be adequately protected without the Sellers owning such Account, provided that in either case the Sellers shall, if requested by Buyer, in writing describe such suit or investigation in detail reasonably acceptable to Buyer. The Purchase Price will be decreased by an amount equal to the product of (i) outstanding balance as of the Cut Off Date of any such retained Account and (ii) the Purchase Price Percentage. The Sellers will notify the Buyer of the adjusted Purchase Price on or prior to the Closing Date. Sellers shall have a right to provide replacement accounts for those retained as Pre-Closing Adjustments of comparable value.

2.3        Payment .

(a)        On the date hereof Buyer shall, by wire transfer of immediately available funds, make a deposit of $60,000,000.00 (the "Deposit") to Sellers, jointly, which shall be held by Sellers as a deposit subject to the terms and conditions of this Agreement and shall be refundable only as provided in section 13.1 of this Agreement. To the extent, if any, that Sellers are required to return the Deposit to Buyer, Sellers shall be jointly and severally liable for the return of the Deposit. If Closing has not occurred by February 16, 2007 at 1pm, Buyer shall make an additional deposit of $15,000,000.00 to be held by Sellers subject to the terms and conditions of this Agreement and shall be refundable only as provided in section 13.1 of this Agreement.

(b)        Subject to satisfaction or waiver of the conditions precedent set forth in Article 5 of this Agreement, on or before 3:00 P.M., Eastern Time on the Closing Date, Buyer shall pay, by wire transfer of immediately available funds to an account, or accounts, specified by the Sellers, an amount equal to the Purchase Price minus the Deposit. The Sellers will be deemed to have simultaneously transferred, and

3

shall simultaneously transfer title to the Accounts to Buyer in accordance with Section 2.4 below.

(c)        After Buyer has received Net Payments from the Accounts equal to 150% of the Purchase Price, Seller shall be entitled to 20% of future Net Payments. Buyer shall provide monthly reports in a form and content reasonably satisfactory to the Seller and remit to Seller, on a monthly basis, Seller's 20% of Net Payments earned during the prior month. Seller may, at its sole expense, audit Buyer upon reasonable notice and during normal business hours, to determine Buyer's compliance. For purposes of this clause, " Net Payments " shall mean all collections and proceeds on Accounts received by Buyer from any source, less any costs and fees of collection or sales, disgorgements and amounts equal to the cost of funds to Buyer and its Affiliates in financing the Purchase Price To the extent that Buyer pays a brokerage fee in excess of 10% for the sale of accounts, said excess shall not be counted against the above Net Payment calculation.

2.4        Transfer . Simultaneously with payment of the Purchase Price, the Sellers and Buyer will execute and deliver to each other a Bill of Sale substantially in the form of Exhibit 2. The Sellers will provide to Buyer, on the Closing Date, or at such other time as is mutually agreed to by the Buyer and Sellers , a computer printout or magnetic tape (the " Closing Tape ") listing the Accounts as of the Cutoff Date that were purchased by the Buyer containing the information set forth on the attached Exhibit 4. On the Closing Date, Sellers will, by means of the aforesaid Bill of Sale and this Agreement, transfer all Sellers' right, title and interest in the Accounts and Buyer will accept same and assume, with respect to each Account, all of Sellers' rights, responsibilities, liabilities and obligations with respect to such Accounts. Sellers shall also deliver executed Powers of Attorney in the form attached as Exhibit 5 and such other transfer documents as Buyer shall reasonably require on at least 48 hours notice prior to the Closing . If the Sellers receive any payments of principal and/or interest by or on behalf of any Debtor with respect to an Account between the Cutoff Date and the Closing Date, Sellers shall hold such amounts in trust for Buyer and pay over such amounts to Buyer, without interest thereon, within seven (7) days after the Closing Date. If payments are received by the Sellers from a Debtor on or after Closing Date, the Sellers shall forward such payments, without interest thereon, to Buyer within seven (7) days from date of receipt. Buyer may, at its sole expense audit Sellers and their Affiliates and agents upon reasonable notice during normal business hours to determine Sellers' compliance.

2.5        Notices, Regulatory Filings and Fees, Sales, Use or Transfer Taxes . If any notices, regulatory filings or fees, sales, use, transfer or other tax or required or assessed or otherwise is or becomes required or payable as a result of the transactions contemplated hereby, Buyer shall assume the obligation to provide such notices, make such regulatory filings and pay such filing fees and tax, to the extent such taxes relate to, or accrue on or after the Closing Date.

3.        REPRESENTATIONS AND WARRANTIES OF THE SELLERS

4

3.1 Due Organization; Authorization; Litigation . Each Seller makes the following representations and warranties as of the date hereof and as of the Closing Date: (a) The Sellers are duly organized, existing and in good standing under the laws of the State of Maryland and the Seller's execution, delivery, and performance of this Agreement are within the Seller's corporate powers and have been duly authorized by all necessary corporate action. The execution and delivery of this Agreement by Seller and the performance of its obligations hereunder will not (i) conflict with or violate (A) the organizational documents of Seller, or (B) any provision of any law or regulation to which Seller is subject, or (ii) conflict with or result in a breach of or constitute a default (or any event which, with notice or lapse of time, or both, would constitute a

default) under any of the terms, conditions or provisions of any agreement or instrument to which Seller is a party or by which it is bound or any order or decree applicable to Seller or result in the creation or imposition of any lien on any of its assets or property. Seller has obtained all consents, approvals, authorizations or orders of any court or governmental agency or body, if any, required for the execution, delivery and performance by Seller of this Agreement. (b) No Litigation is pending or to Seller's Knowledge threatened involving (i) any Seller that relates to any Accounts or (ii) any Seller or its assets that, if adversely determined, could have an adverse effect on this transaction or the value of Accounts having an aggregate face amount of $5,000,000 or more or a material adverse effect on any Seller's financial condition. (c) Sellers have not utilized any investment banker or finder in connection with the transaction contemplated hereby who might be entitled to a fee or commission upon consummation of the transactions contemplated in this Agreement which might in any way or amount be the responsibility of the Buyer or be a claim against, or with respect to, any Accounts. 3.2 Representation As To Ownership and Assignability . Each Seller makes the following representations and warranties as to its Accounts as of the date hereof and as of the Closing Date: (a) Seller has good and marketable title to the Accounts, is the sole owner thereof and has full right to transfer and sell the Account free and clear of any encumbrance, equity, lien, pledge, charge, claim, security interest, obligation to third party collection agencies or attorneys. (b) Seller has the right to assign the Accounts without the consent of any Person and subject to no continuing duties or restrictions under any purchase agreement to which a Seller or any predecessor in interest is a party, except for any obligation specifically set forth in this Agreement. (c) The Accounts have been originated, and have been maintained, collected and serviced by a Seller and its predecessors in interest and their respective agents and5

Affiliates, in full compliance with applicable state and federal laws including, without limitation and where applicable, without limitation, the Truth in Lending Act, the Equal Credit Opportunity Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Fair Credit Billing Act. (d) The cashflow reports delivered by Seller to Purchaser for the period of twelve months prior to the Cutoff Date accurately reflect the gross cash flow and collection activity with respect to the Accounts. (e) All collection agents, servicers, attorneys and other persons who have any claims with respect to efforts to collect on any Accounts have been paid in full and no such claims, disputed or undisputed, are outstanding, and no collection agents, servicers, attorneys and other persons have any right to refuse to release the Accounts to Purchaser free of any lien or claim, immediately upon Seller's request. (f) The Accounts listed in the Diligence File in the "pre-litigation", "pre-judgment" and "judgment" categories, respectively, were properly listed in those categories as of the date of the Diligence File. (g) That as of the date of the Diligence File, the "statute of limitations models" used by Sellers in the ordinary course of business indicate that the applicable statute of limitations period for instituting litigation has not expired for the Accounts listed in the "pre-litigation", "pre-judgment" and "judgment" categories of the Diligence File. Notwithstanding this representation, Buyer agrees that it shall be responsible to determine the applicable Statute of Limitations for all accounts in the sale. (h) Seller's inability to obtain agreements, applications or other media with respect to any Accounts that are listed in the "pre-litigation" and "pre-judgment" categories of the Asset Schedule will not have a material adverse affect on Buyer's ability to collect the portfolio of Accounts purchased from a Seller. (i) All Accounts are closed and there are no requirements for future advances of credit or other performance by Seller. 3.3 Representations Concerning Accounts . With respect to each of its Accounts, except for those Accounts listed as "Specials", "Bankrupt" and "Deceased in the Diligence and Cutoff Files and the file used to calculate and prepare the Closing Statement, each Seller represents and warrants that to the best of Seller's Knowledge, as of the Cutoff Date:

|     |                                                                                                                                                                                                 |
| --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| (a) | the balance of the Accounts as will be reflected on the Closing Tape is correct;                                                                                                                 |
| (b) | the Accounts are valid and duly enforceable in accordance with their terms;                                                                                                                      |
| (c) | the debt represented by the Account has not been satisfied and/or the stated balance on such Account has not been paid;                                                                          |
| (d) | the Accounts were not created as a result of fraud or forgery such that all of the Debtors have no liability for such Account;                                                                    |
| (e) | the Debtor has not been released from liability on the Account;                                                                                                                                  |
| (f) | except as noted in the Diligence File and the Cutoff File used to calculate and prepare the Closing Statement, the Debtor has not filed bankruptcy nor have all of the Debtors' liability relating to the Account been discharged in bankruptcy; and |
| (g) | except as noted in the Diligence File and the Cutoff File used to calculate and prepare the Closing Statement, all of the Debtors are not deceased.                                               |

6

No Seller makes any representations or warranties, express or implied, with respect to any of the other Accounts other than as specifically set forth in this Section 3.3 and Section 3.2, including specifically, but not by way of limitation, any representation or warranty regarding any information in any due diligence file given to and reviewed by Buyer regarding Sellers' analysis of whether or not any Account is within any applicable statute of limitation such that legal action to collect same would be permitted by law. 3.4 Solvency . Each Seller represents and warrants that its sale of Accounts to Buyer and its obligations under this Agreement: (a) were not made in contemplation of its insolvency of any Seller; (b) were not made with the intent to hinder, delay or defraud the respective creditors of any Seller; (c) will be recorded in the records of such Seller and such records will be continuously maintained by that party; and (d) represents a bona fide and arm's length transaction undertaken for adequate consideration in the ordinary course of business.
3.5                                                                                  Remedies for Breach of Representations Concerning Accounts .

|     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
| --- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| (a) | Time Period. Buyer's sole remedy against Sellers for a breach of any of the representations listed in Section 3.3 (individually, a "Breach" and collectively, "Breaches") shall be as set forth in this Section 3.5(a). Buyer shall have no remedy for any Breaches to the extent Breaches have occurred that relate to Accounts having aggregate outstanding balances of $30,000,000.00 ("Breach Threshold"). Buyer must notify the Seller of Breaches in excess of the Breach Threshold (any such Breaches being referred to as "Compensable Breaches") no later than 120 days from the Closing Date. Seller shall have, at its option, the right to (i) cure such Compensable Breach in all material respects, (ii) repurchase the affected Account(s) by paying Buyer the Purchase Price Percentage multiplied by the outstanding balance of such Account(s) as shown on the Closing Tape. A Notice of Claim under this Section 3.5 must be delivered by the Buyer to the Seller in writing and accompanied by the documentation required under Section 3.5(b). Notwithstanding anything in this Agreement to the contrary, the Buyer's failure to provide a Notice of Claim within the applicable time period in accordance with this Section 3.5(a) and 3.5(b) with respect to any claimed Compensable Breach of Seller shall terminate and waive any rights Buyer may have to any remedy for such Compensable Breach under this Agreement. Notwithstanding anything in this Agreement to the contrary, this Section is not intended to limit Buyer's rights and remedies under Section 10.2 with respect to claims and other matters asserted by third parties. |
| (b) | Form of Notice Required. Buyer shall notify Seller in writing of each Account that Buyer claims to be a Compensable Breach by Seller as set forth above ("Notice(s)"). All Notices shall contain the customer's name and applicable Seller's account number and shall be accompanied with at least the following applicable documentary evidence reasonably satisfactory to the Seller: |

Bankruptcies: Credit Bureau with non-dismissed bankruptcies, or

Attorney name, case number, and date of filing, or

Copy of actual court papers, or approved third party service

(Banko, Inc.; Experian; Trans Union; or Equifax)7

Deceased: Copy of death certificate, or

Credit bureau indicating date of death, or

Executor or attorney letter with date of death, or

approved third party service (Banko, Inc.; Experian; Trans

Union; or Equifax) Settled or

Paid in Full: Copy of Seller letter verifying action

Copy of the canceled, final check (front and back) Fraud: Letter from or to Seller or Seller's agent

Complaint in writing explaining event Seller shall make a determination within thirty (30) business days after receipt of Buyer's Notice, unless Seller's delay in responding is caused by or related to Buyer's failure to provide Seller with necessary information and documentation required under this Section 3.4.

(c)     Repurchase Price . If the Seller elects to either repurchase the Accounts or reimburse the Buyer in the amount of the Purchase Price Adjustment as set forth in Section 3.4(a)(ii), the Seller shall not be obligated to make payment on an Account by Account basis, but may elect to provide such adjustment in a single payment within 30 days of notification, at Seller's option. The Seller makes no representation as to the number of Accounts that may be subject to repurchase pursuant to this section.

4.                    REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer makes the following representations and warranties as of the date hereof and as of the Closing Date:

4.1     Due Organization; Authorization . Buyer is duly organized, existing and in good standing as a limited liability company under the laws of the State of Delaware. Buyer has full authority to execute, deliver and perform this Agreement according to its terms.

4.2     No Conflict . Buyer's review of Account and Debtor information will not represent a conflict of interest on the part of Buyer or Buyer's officers or employees. The execution and delivery of this Agreement by Buyer and the performance of its obligations hereunder will not (i) conflict with or violate (A) the organizational documents of Buyer, or (B) any provision of any law or regulation to which Buyer is subject, or (ii) conflict with or result in a breach of or constitute a default (or any event which, with notice or lapse of time, or both, would constitute a default) under any of the terms, conditions or provisions of any agreement or instrument to which Buyer is a party or by which it is bound or any order or decree applicable to Buyer or result in the creation or imposition of any lien on any of its assets or property. Buyer has obtained all consents, approvals, authorizations or orders of any court or governmental agency or body, if any, required for the execution, delivery and performance by Buyer of this Agreement.

8

4.3     Investigation of Accounts . Buyer is a sophisticated investor and its bid and decision to purchase the Accounts are based upon its own independent expert evaluations of the nature, validity, collectibility, enforceability and value of the Accounts. The Buyer has had sufficient opportunity to complete the independent investigation and examination into the Accounts that Buyer deems necessary. Buyer enters into this Agreement solely on the basis of that investigation and Buyer's own judgment. Buyer has made an independent determination that the Purchase Price represents the Accounts' fair and reasonable value. Buyer is not acting in reliance on any representation by the Sellers, except those representations and warranties specifically given in Section 3.3.

4.4     Accounts Sold As Is . Buyer acknowledges and agrees that except for the warranties and representations set forth in Section 3.3 of this Agreement, Sellers have not and do not represent, warrant or covenant the nature, accuracy, completeness, enforceability or validity of any of the Accounts and any supporting documentation to the extent provided by Sellers to Buyer either before or after the date of this Agreement; specifically including, but not by way of limitation, any information in any due diligence file given to or reviewed by Buyer regarding Sellers analysis of whether or not any Account is within any applicable statute of limitation such that legal action to collect same would be permitted by law] and, subject to the terms of this Agreement, all documentation, information, analysis and/or correspondence, if any, which is or may be sold, transferred, assigned and conveyed to Buyer with respect to any and all Accounts are sold, transferred, assigned and conveyed to Buyer on an "AS IS, WHERE IS" basis, WITH ALL FAULTS.

4.5     No Finders . Buyer has not utilized any investment banker or finder in connection with the transaction contemplated hereby who might be entitled to a fee or commission upon consummation of the transactions contemplated in this Agreement which might in any way or amount be the responsibility of the Sellers.

5.      CONDITIONS PRECEDENT TO PURCHASE AND SALE OF ACCOUNTS

5.1     Representations and Warranties . The representations and warranties of the Sellers and Buyer in this Agreement will be true and correct in all material respects as of the Closing Date.

5.2     Compliance with Covenants and Agreements . Buyer and the Sellers will have complied in all material respects with each of their respective covenants and agreements in this Agreement on or before the Closing Date.

5.3     No Violation of Law . Consummation by Buyer and the Sellers of the transactions contemplated by this Agreement and performance of this Agreement will not violate any order of any court or

governmental body having competent jurisdiction or any law or regulation that applies to Buyer or the Sellers.

**9**

5.4    Approvals and Notices . All required approvals, consents and other actions by, and notices to and filings with, any governmental authority or any other person or entity will have been obtained or made. If Buyer is a corporation, Buyer will have delivered to the Sellers a certificate from Buyer's corporate secretary, or other documentation satisfactory to the Sellers and its counsel, certifying that Buyer's board of directors has resolved or consented to Buyer entering into this Agreement and consummating the transactions contemplated hereby. Seller shall have delivered secretary's certificates together with certified charter documents, resolutions and lists of incumbent officers as well as an opinion of outside counsel, all in form and substance satisfactory to Buyer.

5.5    Material Change In Financing Market . No Material Adverse Change or Force Majeur has occurred prior to February 24, 2007 which would cause Buyer to be unable to pay the remaining amounts owed at the time of Closing. For purposes of this paragraph, "Material Adverse Change" means any closing of the United States securities markets or banks, or any banking moratorium, or any change, effect, event, occurrence or development which individually or in the aggregate would reasonably be expected to be materially adverse to the United States banking, financial or securities markets including but not limited to any change, effect, event, occurrence or development (1) related to or arising from the commencement, occurrence, continuation or intensification of any war, armed hostilities or acts of terrorism, or (2) related to or arising from changes in laws, rules or regulations of general applicability or applicable to the industry in which the parties operate or interpretations thereof by any governmental entity. Force Majeure means acts of God or of the public enemy, fire, flood, storm, explosion, earthquake, riots, wars, hostilities, civil commotion, strikes, interruption of supply, inability to obtain fuel, power, raw materials or freight or transportation services, equipment or transmission failure or damage reasonably beyond Buyer's control, or other cause reasonably beyond Buyer's control.

5.6    Closing Scrub. Sellers shall have performed a "Banco" or similar bankruptcy "scrub" with respect to the Accounts within seven (7) days of the Cutoff Date and shall have properly classified on the Cutoff File all Accounts that are reported to have Debtors that are subject to bankruptcy proceedings.

**6.**    RIGHTS AND OBLIGATIONS OF THE SELLERS AND BUYER

6.1    Notice to Debtors, Etc . At Buyer's reasonable request, the Sellers will provide a form letter, in form and substance satisfactory to Buyer, that Buyer may, at Buyers sole expense, reproduce, address and send to a Debtor to confirm that the Sellers sold the Debtor's Account to Buyer. The Sellers shall have the right to review and approve, which approval will not be unreasonably withheld, all written notices sent by the Buyer to the Debtor informing the Debtor of the transfer of the Debtor's Account to the Buyer. Seller shall also, promptly upon Buyer's request, send notices to each attorney, collection company servicer or other person collecting any Account of the transfer of the Debtor's Account to Buyer. The Buyer shall not discredit or impugn the reputation of any Seller

**10**

in any correspondence sent to the Debtor in connection with the Accounts purchased by the Buyer.

6.2    Retrieval of Account Documents . After the Closing Date, the Sellers will furnish Buyer at no charge with any Account Documents in Sellers' possession that Buyer reasonably requests within three (3) years of the Closing Date. Sellers will also use commercially reasonable efforts to obtain from prior owners and/or the credit originator directly any Account Documents that Buyer requests and which Sellers are entitled to obtain, at Buyer's sole expense which will be equal to the actual out of pocket cost(s) incurred by the Sellers in obtaining the Account Documents. Except in instances of litigation unrelated to collection activity or accounts that are within the statute of limitation at the time requested, the Sellers will have no obligation to provide Buyer with or cooperate with the Buyer in obtaining Account Documents after three (3) years after the Closing Date.. Buyer's request for an Account Document must be presented to Sellers on a form provided by Sellers and must be made with sufficient specificity to enable the Sellers to locate the Account Document. The Sellers will use reasonable diligence to provide the Account Document. Notwithstanding any other provision of this Agreement, the failure of the Sellers to provide an Account Document requested by Buyer will not be a breach of this Agreement.
Buyer may, in addition or in the alternative to its request for Account Documents, request an Affidavit from Sellers, in the form shown in Exhibit 3, indicating the date the Account was opened or acquired, the Account number and the balance existing as of a specified date to the extent that said information is available to the Sellers. The Sellers will provide a total number of affidavits equal to ten percent (10%) of the total accounts purchased. Sellers shall have three (3) weeks to complete the affidavits requested unless the requests exceed 10,000 affidavits in such case Sellers shall have a reasonable period of time to complete the request. Sellers shall agree to cooperate with Buyer to complete affidavit requests in a shorter time on an occasional basis. Requests shall contain sufficient information about the relevant accounts to allow Sellers or its representatives to locate the Account information to complete the affidavits.

6.3    Credit Bureau Reporting . The Buyer may report its ownership of the Accounts to any of the credit reporting agencies provided that the Buyer agrees to and does comply with the Fair Credit Reporting Act (FCRA) and any other laws or regulations governing credit agency reporting. Sellers warrant and represent that the information provided to Buyer regarding charge-off and last payment date information is accurate, true and correct to the best of each Sellers Knowledge based upon information provided to each Seller at the time of their purchase.

6.4    Compliance with Law . With respect to any Account, Buyer or Buyer's agent will at all times: (a) comply with all state and federal laws applicable to debt collection, including, without limitation, the Consumer Credit Protection Act, the Fair Credit Reporting Act and the Fair Debt Collection Practices Act, and (b) for any Account where the statute of limitations has run, not falsely represent that a lawsuit will be filed if the Debtor does not pay.

**11**

6.5          Post Closing Account Review . Prior to initiating any contact, whether verbal, written or electronic, with a Debtor, Buyer shall review the portfolio through a competent third party vendor (e.g., Banko, Inc.) or other process to discover whether any Accounts included are involved in an open bankruptcy case or have been discharged in bankruptcy. Buyer shall immediately cease any collection efforts upon receiving notice, whether from the Debtor, the Sellers, or a third party on behalf of the Debtor, that a Debtor has discharged the debt in bankruptcy, and shall not re-commence collection activity until Buyer has conducted a reasonable investigation into the Debtor's claim and determined, based upon reasonable evidence, that the Debtor's claim is unfounded.

6.6          Notice of Claims . Buyer will use its reasonable efforts to notify the Sellers promptly of any claim or threatened claim against the Sellers or any claim or threatened claim that may affect the Sellers, that is discovered by Buyer. Each Seller will use its reasonable efforts to promptly notify the Buyer of (i) any notice it receives that an Account is subject to Bankruptcy protection and (ii) any claim or threatened claim against Buyer, or that relates to any Account or any claim or threatened claim that may affect Buyer or relate to any Account.

6.7          Seller As Witness . If Buyer, upon reasonable written notice to a Seller, requests or subpoenas an officer or employee of Seller or its predecessors in interest, Affiliates or their respective agents to appear at a trial, hearing or deposition concerning an Account to testify about the Account, Seller shall use commercially reasonable efforts to ensure the requested employee appears at such hearing or deposition and will be available for consultation with Buyer. Buyer will pay Seller for the officer's or employee's time in traveling to, attending and testifying at the trial, hearing or deposition, whether or not the officer or employee is called as a witness, at the hourly rate equivalent of such officer or employee. Buyer will also reimburse Seller for the officer's or employee's reasonable out-of-pocket, travel-related expenses.

6.8          File UCC-1 . Upon Closing, Buyer shall be permitted to file UCC-1 financing statements in appropriate jurisdictions against Seller describing this transaction relating to this transfer of any Accounts.

6.9          Prior Purchase Agreements If requested by Buyer, Sellers shall promptly deliver to Buyer all prior purchase and sale agreements relating to any Accounts ("Prior Purchase Agreements"), bills of sale, UCC-1s and other transfer documents that relate to any Accounts.. Sellers shall retain all of those documents that are in a Seller's possession or control for at least seven (7) years from the Closing. Sellers hereby assign to Buyer all rights to be indemnified, be defended and be held harmless, and all rights to obtain documents, media and other information, with respect to any Accounts under any Prior Purchase Agreement to which any Seller is a party or has rights, provided however that any such right is assignable and Buyer may only exercise any such right if Sellers fail to exercise such right after reasonable request from Buyer.

12

7.          USE OF SELLERS' OR PREDECESSOR'S NAME

7.1          Use of Names . The Buyer will not use or refer to the Sellers' names, the name of any prior owner of the Account or of the original creditor of the Account, except to reference same for purposes of identifying an Account in communications with the Account's Debtor, in collecting amounts outstanding on the Account, and in conducting litigation or participating in a bankruptcy proceeding with respect to the Account. Buyer shall not represent that there is an affiliation or agency relationship between Buyer and any Seller, nor shall Buyer state or represent in any way that it is acting for or on behalf of any Seller. Buyer shall not misrepresent, mislead or otherwise fail to adequately disclose its ownership of the Accounts.

7.2          Breach . Buyer's breach of this Article 7 will result in actual and substantial damages to the Sellers, the amount of which will be difficult to ascertain with precision. Therefore, if Buyer breaches this Article 7, Buyer will pay the Sellers any actual damages and attorney's fees incurred by Sellers caused by Buyer's breach of this provision.

8.          THE SELLERS' RIGHT TO REPURCHASE ACCOUNTS

8.1          Accounts Affected . Sellers shall have the right to repurchase any Accounts that have not been paid in full, released or compromised by Buyer, if the Sellers determine that there is a pending or threatened suit, arbitration, bankruptcy proceeding or other legal proceeding or investigation relating to an Account or a Debtor naming any one or more of the Sellers or otherwise involving the Sellers' interest therein in a manner unacceptable to the Sellers, or the Sellers otherwise determine, in its/their sole discretion, that such matter cannot be resolved and/or that the Sellers' interest therein cannot be adequately protected without the Sellers owning such Account.

8.2          Right to Repurchase .

(a)          Upon notice to Buyer, a Seller may repurchase any Account described in Section 8.1 by repaying to Buyer an amount equal to the product of the outstanding balance of such Account and the Purchase Price Percentage and, if requested by Buyer, Sellers shall promptly provide to Buyer a detailed written explanation of Sellers' reason for any such repurchase..

(b)          Upon delivering to the Seller a full accounting of the Account, Buyer may retain any money or value that Buyer collected or received on the Account before Buyer's receipt of the Seller's notice electing to repurchase the Account; provided that, after Buyer has received the Seller's notice, Buyer will immediately cease releasing or compromising the Account.

9.          RIGHT OF RESALE

13

9.1          Sale or Transfer to a Third Party . Buyer may resell or transfer the ownership of any Account to any third party, including the transfer of Debtor information (such as names and addresses) to any third party, (each referred to as "Third Party Buyer"); provided, however, that Buyer must conduct commercially reasonable and prudent due diligence of the Third Party Buyer to assure with reasonable certainty that said Third Party Buyer will be able to and has agreed to comply with the relevant terms and conditions of this Agreement. Buyer shall defend, indemnify and hold harmless Sellers from any and all causes of action, claims, expenses or judgments incurred by Sellers for which Buyer's Third Party Buyer or any buyer of Third Party Buyer (collectively referred to herein as "Downstream Buyer") is solely or partially responsible. Buyer shall require all Downstream Buyers to agree to be bound to all of the Buyer's obligations and limitations or remedies, and to

acknowledge all of Sellers' rights set forth in this Agreement. All Downstream Buyers' requests for documentation pursuant to Section 6.2 must be made to Sellers through Buyer, unless Sellers otherwise agree in writing. Nothing in this Section 9.1 shall modify the indemnification provisions between Sellers and Buyer as set forth in Article 10 of this Agreement.

9.2   Exceptions . Notwithstanding the terms and conditions of Sections 9.1 and 12.5, Buyer may pledge the Accounts and its rights under this Agreement as collateral for a loan and for the purpose of obtaining financing secured by such Accounts as long as Buyer remains bound by, and any purchaser remains subject to, the relevant obligations, terms and conditions of this Agreement. Buyer shall remain obligated under, and shall retain all liabilities related to, this Agreement if it transfers, hypothecates or pledges all or any of the Assets or its rights hereunder.

10.   INDEMNIFICATION

10.1   Indemnification by Buyer . Buyer hereby agrees to indemnify, defend, and hold harmless the Sellers, and their respective shareholders, subsidiaries and Affiliates, and all of their respective officers, directors and employees, attorneys and collection agencies, from and against any and all claims, damages, losses, costs or expenses (including any and all reasonable attorneys' and experts' fees), asserted by a third party (collectively, "Losses") that Sellers might suffer, incur or be subjected to by reason of any legal action, proceeding, arbitration or other claim, whether commenced or threatened, whether or not well grounded and by whomsoever concerned, based upon any breach of this Agreement, or any other act or omission by Buyer and its Affiliates, and their respective its officers, directors, agents, employees, representatives or any Downstream Buyers with respect to any Account or any party obligated on an Account after the Closing Date; provided, however, that, (i) the Sellers notify Buyer within a reasonable period of time of any such Losses (provided that any failure to notify the Buyer within such reasonable period of time shall not affect the obligations of the Buyer to indemnify the Sellers hereunder unless the Buyer is prejudiced by such failure), (ii) such Losses are not primarily attributable to any negligent act or omission by any Sellers, their parent, Affiliates or subsidiaries, predecessors in interest or any of the employees or agents of any of the

14   following, and (iii) the Sellers provides Buyer with information that is available to the Sellers and is reasonably necessary for Buyer to prosecute its defense of the action.
Buyer shall bear all expenses in connection with the defense and/or settlement of any such claim or suit. The Sellers shall have the right, at its own expense, to participate in the defense of any claim against which it is indemnified and which as been assumed by the obligation or indemnity hereunder; Buyer, in the defense of any such claim, except with the written consent of the Sellers, shall not consent to entry of any judgment or enter into any settlement that either: (a) does not include, as an unconditional term, the grant by the claimant to the Sellers of a release of all liabilities in respect of such claims, or (b) otherwise adversely affects the rights of the Sellers.

10.2   Indemnification by Seller . Subject to the provisions of Section 3.5, Sellers jointly and severally hereby agree to indemnify, defend, and hold harmless the Buyer, its parents, subsidiaries and Affiliates and predecessors in interest, and their respective officers, directors and employees, from and against any and all Losses, whether asserted by a third party or otherwise that Buyer might suffer, incur or be subjected to by reason of any legal action, proceeding, arbitration or other claim, whether commenced or threatened, whether or not well grounded and by whomsoever concerned, based upon any breach of this Agreement, or any other act or omission by any Sellers, its Affiliates and predecessors in interest and their respective officers, directors, agents, employees, or representatives with respect to any Account or any party obligated on an Account prior to the Closing Date, provided, however, that (i) the Buyer notifies Sellers within a reasonable time of any such Losses (provided that any failure to notify the Sellers within such reasonable period of time shall not affect the obligations of the Sellers to indemnify the Buyer hereunder unless the Sellers are prejudiced by such failure), (ii) such Losses are not primarily attributable to any negligent act or omission by the Buyer, its parent, Affiliates, subsidiaries, transferees, contractors, agents or any of their employees or agent and (iii) the Buyer provides Sellers with information that is available to the Buyer and is reasonably necessary for Sellers to prosecute its defense of the action. Notwithstanding the foregoing, Sellers are not responsible for any breach of the representation in Section 3.2(c) with respect to the origination or predecessors in interest of any Account, except to the extent that a Seller has any right to be indemnified, defended or held harmless for such matters. Sellers shall bear all expenses in connection with the defense and/or settlement of any such claim or suit. The Buyer shall have the right, at its own expense, to participate in the defense of any claim against which it is indemnified and the defense of which has been assumed by the Sellers' obligation or indemnity hereunder. Sellers, in the defense of any such claim, except with the written consent of the Buyer, shall not consent to entry of any judgment or enter into any settlement that either, (a) does not include, as an unconditional term, the grant by the claimant to the Buyer of a release of all liabilities in respect of such claims, or (b) otherwise adversely affects the rights of the Buyer.

10.3   Survival . The representations and warranties of the Sellers set forth in Section 3.3 shall survive the Closing Date for a period of 120 days thereafter, and all other representations and warranties of the Buyer and the Sellers shall survive the Closing Date until expiration of the applicable statute of limitations. The covenants and agreements of each party

15   hereunder shall survive in accordance with their terms, or, if not specified, until expiration of the applicable statute of limitations.

10.4   Limitation of Liability . Notwithstanding anything to the contrary herein, Sellers shall not be liable in respect of any Losses arising from any breach of the representations and warranties set forth in this Agreement unless and until the aggregate cumulative amount of Losses claimed hereunder exceeds $100,000.00 (the "Deductible"), in which case Sellers shall be liable only for such excess over the Deductible .

10.5   Continuing Insurance . Sellers agree to maintain insurance after Closing for a period of 3 years at Seller's current insurance levels as of the Cutoff date and will specifically identify Buyer and its

affiliates and successors and assigns as a "Loss Payee" and provide evidence of compliance with this provision as and when Buyer shall reasonably request..

10.6    Further Assurances . On and after the Closing Date, Sellers shall (i) give such further assurances to Buyer and shall execute, acknowledge and deliver all such acknowledgments, assignments, instruments, pleadings and notices, and take such further action, as Buyer may reasonably request to effectively vest in Purchaser the full legal and equitable title to, and the right to collect and otherwise have control of, the Accounts and the proceeds thereof (including without limitation, judgments and collections), free, clear and unencumbered of liens, claims and other restrictions, and to effectuate the purposes of this Agreement; and (ii) use its best efforts to assist Buyer in the orderly transition of the Accounts. Should any Seller fail to take any such action after reasonable notice from Buyer, (without limiting any other rights and remedies available to Buyer) Buyer shall have the right to take such action whether in Buyer's own name or in a Seller's name pursuant to the Power of Attorney provided by such Seller to Buyer.

10.7    Post-Closing Assurance. For two years after the Closing Date, Sellers shall (i) continue their existence, solvency and good standing and (ii) cause Great Seneca Financial Corporation, Platinum Financial Services Corporation and Centurion Capital Corporation, on a combined basis, to maintain a net worth of at least $10,000,000, provided that to the extent the net worth is less than $10,000,000 Sellers may provide a letter of credit in the amount of that deficiency from a bank and in form and substance reasonably acceptable to Buyer to secure all obligations of Sellers under this Agreement or a guaranty from another entity reasonably acceptable to Buyer. Sellers shall upon request of Buyers provide evidence of compliance with this covenant in form reasonably acceptable to Buyer.

16

11.    CONFIDENTIALITY
11.1   Confidential Information . From and after the execution of this Agreement, and except as required by applicable law, Buyer hereto shall keep confidential, and shall use reasonable efforts to cause their respective officers, directors, employees and agents to keep confidential, any and all information obtained from the Sellers concerning the assets, properties and business of the Sellers, and shall not use such confidential information for any purpose other than those contemplated by this Agreement; provided, however , that Buyer shall not be subject to the obligations set forth in the preceding sentence with respect to any such information provided to it by the Sellers which either (i) was in Buyer's possession at the time of the Sellers' disclosure, (ii) was in the public domain at the time of the Sellers' disclosure, or subsequently enters the public domain through no act or failure to act on the part of the Sellers, or (iii) is lawfully obtained by Buyer from a third party. Nothing in this Agreement shall be construed to limit Buyer's obligations under any other confidentiality agreement entered into between Buyer and the Sellers.

11.2   Public Announcement . Neither Buyer nor the Sellers shall make any public announcement of this Agreement or provide any information concerning this Agreement or the subject matter hereof to any representative of the news media without the prior written approval of the other party. Except as required by law, the parties will not respond to any inquiry from public, governmental, or administrative authorities concerning this Agreement without prior consultation and coordination with each other.

12.    GENERAL PROVISIONS
12.1   Applicable Law . The laws of the State of Delaware shall govern the enforcement and interpretation of this Agreement and the rights, duties and obligations of the parties hereto.

12.2   WAIVER OF JURY TRIAL . NOTWITHSTANDING ANYTHING STATED HEREIN, IF EITHER PARTY BRINGS ANY ACTION AGAINST THE OTHER PARTY, WHETHER AT LAW OR EQUITY, REGARDING THE OTHER PARTY'S PERFORMANCE UNDER THIS AGREEMENT OR BRINGS ANY ACTION CONNECTED IN ANY WAY WITH THIS AGREEMENT, THE PARTIES AGREE TO WAIVE TRIAL BY JURY.

12.3   Notices . All notices or other documents required to be given pursuant to this Agreement shall be effective when received and shall be sufficient if given in writing, hand delivered, sent by overnight air courier or certified United States mail, return receipt requested, addressed as follows:

If to Sellers:    Thomas A. Henning, Esq.

General Counsel Personal & Confidential

17

702 King Farm Blvd. 5 th Floor Rockville , Maryland 20850

If to Buyer:    PALISADES ACQUISITION XV, LLC

210
Sylvan
Avenue
Englewo
od Cliffs,
New
Jersey
07068

Wi
th
a
co
py
to:

Lowenste
in
Sandler
PC

65
Livingsto
n Avenue
Roseland
, New
Jersey
07068
Attention
: Daniel
J. Barkin,
Esq.

The parties hereto may at any time change the name and addresses of persons to whom must be sent all notices or other documents required to be given under this Agreement by giving written notice to the other party.

12.4    Binding Nature of Agreement . This Agreement is and shall be binding upon and inure to the benefit of the parties hereto, and their respective legal representatives, successors and permitted assigns.

12.5    Assignment . Neither party may assign this Agreement or any of its rights in this Agreement without the other's prior written consent, except as provided in Article 9 above. Notwithstanding the foregoing sentence, Sellers may assign its rights and obligations under this Agreement to any of its affiliates, subsidiaries, or parent corporations without obtaining Buyer's permission or consent.

12.6    Expenses . Except as otherwise expressly provided in this Agreement, Buyer and the Sellers will each bear its own out-of-pocket expenses in connection with the transaction contemplated by this Agreement.

12.7    Entire Agreement . This Agreement and the Exhibits hereto embody the entire agreement and understanding between the parties with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter. The parties make no representations or warranties to each other, except as contained in this Agreement or in the accompanying Exhibit or the certificates or other closing documents delivered in accordance with this Agreement. All prior representations and statements made by any party or its representatives, whether orally or in writing, are deemed to have been merged into this Agreement, except as otherwise stated in this Agreement.

12.8    Amendment . Neither this Agreement nor any of its provisions may be changed, waived, discharged or terminated orally. Any change, waiver, discharge or termination may be effected only by a writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought.

12.9    Severability . If any one or more of the provisions of this Agreement, for any reason, is held to be invalid, illegal or unenforceability, the invalidity, illegality or unenforceability

18

will not affect any other provision of this Agreement, and this Agreement will be construed without the invalid, illegal or unenforceable provision.

12.10    Waiver . Except as required under Section 3.4, no failure of any party to take any action or assert any right hereunder shall be deemed a waiver of such right in the event of the continuation or repetition of the circumstances giving rise to such right.

12.11    Headings and Sections . Headings are for reference only, and will not affect the interpretation or meaning of any provision of this Agreement. All references to Section numbers herein shall refer to Sections of this Agreement.

12.12    Counterparts . This Agreement may be signed in one or more counterparts, all of which taken together will be deemed one original.

12.13    Joint and Several Liability . SELLERS SHALL BE JOINTLY AND SEVERALLY LIABLE FOR ALL OF ANY OBLIGATIONS OF ANY SELLER(S) UNDER THIS AGREEMENT.

13.    TERMINATION AND DEFAULT

13.1.    Termination. If Sellers are in default hereunder for a material breach of one or more of the material terms or conditions of this Agreement and such failure continues for more than ten (10) business days after receipt of written notice, Buyer may, provided that it is not itself in material breach of one or more of the material terms of this Agreement, (i) terminate this Agreement by written notice delivered to Sellers, in which event Buyer shall be entitled to full return of the Deposit, or (ii) waive such defaults and proceed to Closing. If Buyer defaults hereunder, and such default is not cured within ten (10) days after written notice thereof from Sellers, then Sellers shall may terminate this Agreement and retain the Deposit as damages; however, Buyer acknowledges that Sellers' actual damages resulting from such breach would be uncertain and not readily ascertainable and agrees that the amount of the Deposit is a reasonable estimate of the lower end of such damages and that nothing in this Section 13.1 shall prevent the Sellers from seeking damages in excess of the Deposit. In the event of a termination of this Agreement as provided in Section 13.1, this Agreement will be of no further force or effect and there will be no liability on the part of any party



with respect thereto, except that the provisions of Sections 10, 11, 12 and 13 will survive any such termination and nothing herein shall relieve any party from liability for any breach of this Agreement occurring prior to such termination.

19

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officers as of the date first written above. BUYER: **PALISADES ACQUISITION XV, LLC**

By: |s| Mitchell Cohen (Signature)

Name: Mitchell Cohen

Title: Manager

SELLERS: GREAT SENECA FINANCIAL CORPORATION,

PLATINUM FINANCIAL SERVICES

CORPORATION, MONARCH CAPITAL

CORPORATION, COLONIAL CREDIT

CORPORATION, CENTURION CAPITAL

CORPORATION, SAGE FINANCIAL

CORPORATION and **HAWKER FINANCIAL**

CORPORATION

By: |s| Daniel J. Vamer (Signature)

Name: Daniel J. Vamer

Title: President

20

**ACCESSION NUMBER:** 0000950123-07-001702

**LANGUAGE:** ENGLISH

**LOAD-DATE:** February 9, 2007

# APPENDIX B

2008 NY Slip Op 50033U, *; 2008 N.Y. Misc. LEXIS 44, **

2 of 2 DOCUMENTS

[*1]  **Deutsche Bank National Trust Company, As Trustee of Argent Mortgage Securities, Inc. Asset-Backed Pass Through Certificates, Series 2005-W4 Under the Pooling and Servicing Agreement Dated as of November 1, 2005, Without Recourse, Plaintiff, against Gustavo Castellanos, Argent Mortgage, LLC, and New York State Department of Taxation and Finance, Defendants.**

277/07

**SUPREME COURT OF NEW YORK, KINGS COUNTY**

*2008 NY Slip Op 50033U; 2008 N.Y. Misc. LEXIS 44*

**January 14, 2008, Decided**

**NOTICE:**    THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**COUNSEL:**  [**1] For Plaintiff: Richard F. Komosinski, Esq., Knuckles & Komosinski, PC, Tarrytown, NY.

For Defendant: No Opposition submitted by defendants to plaintiffs' Judgment of Foreclosure and Sale.

**JUDGES:** Hon. Arthur M. Schack , J.S.C.

**OPINION BY:** Arthur M. Schack

**OPINION**

Arthur M. Schack, J.

Plaintiff's renewed application for a judgment of foreclosure and sale for the premises located at 78 Van Siclen Avenue, Brooklyn, New York (Block 3932, Lot 45, County of Kings) is denied without prejudice. In my prior decision in this case, issued on May 11, 2007, *15 Misc 3d 1134 (A), 841 N.Y.S.2d 819, 2007 NY Slip Op 50978(U)*, I enumerated various defects in plaintiff's (Deutsche  [*2]  Bank) application. This renewed application does not address any of these defects. Further, my review of the instant application raises two additional matters that must be satisfactorily addressed or I will dismiss the instant action with prejudice.

As noted in my May 11, 2007 decision, Deutsche Bank lacks standing to bring this action since January 19, 2007, the day when Deutsche Bank assigned the instant mortgage and note to MTGLQ Investors, L.P. Goldman Sachs calls MTGLQ Investors, L.P. a "significant subsidiary" in exhibit 21.1 of its November 25, 2006 10-k Filing with the Securities and Exchange  [**2] Commission. I explained (citing *Saratoga County Chamber of Commerce, Inc. v Pataki, 100 NY2d 801,*

*812, 798 N.E.2d 1047, 766 N.Y.S.2d 654 [2003], cert denied 540 U.S. 1017, 124 S. Ct. 570, 157 L. Ed. 2d 430 [2003], Caprer v Nussbaum, 36 AD3d 176, 181, 825 N.Y.S.2d 55 [2d Dept 2006]*, and *Stark v Goldberg, 297 AD2d 203, 746 N.Y.S.2d 280 [1st Dept 2002]*) how Deutsche Bank now lacks standing to pursue this action. Further, I held, *at 2007 NY Slip Op 50978(U) *5-6:*

It is clear that plaintiff Deutsche Bank lacks standing to sue since January 19, 2007, when it assigned its ownership of the Castellanos' mortgage loan to the Goldman Sachs subsidiary, MTGLQ Investors, L.P. The Court, in *Campaign v Barba, 23 AD3d 327, 805 N.Y.S.2d 86*, instructed that "[t]o establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and the mortgage note, *ownership of the mortgage*, and the defendant's default in payment [*Emphasis added*]." (*See Household Finance Realty Corp. of New York v Winn, 19 AD3d 545, 796 N.Y.S.2d 533 [2d Dept 2005]; Sears Mortgage Corp. v Yaghobi, 19 AD3d 402, 796 N.Y.S.2d 392 [2d Dept 2005]; Ocwen Federal Bank FSB v Miller, 18 AD3d 527, 794 N.Y.S.2d 650 [2d Dept 2005]; U.S. Bank Trust Nat. Ass'n Trustee v Butti, 16 AD3d 4 08, 792 N.Y.S.2d 505 [2d Dept 2005]; First Union Mortgage Corp. v Fern, 298 AD2d 490, 749 N.Y.S.2d 42 [2d Dept 2002] ; Village Bank v Wild Oaks Holding, Inc., 196 AD3d 812, 601 N.Y.S.2d 940 [2d Dept 1993]*).  [**3] However, in light of the fact that Deutsche Bank has established the existence of the mortgage and the note, and defendant's default in payment, the Court is denying

Case 1:07-cv-06397  Document 29-2  Filed 02/07/2008  Page 14 of 48

Page 2

2008 NY Slip Op 50033U, *; 2008 N.Y. Misc. LEXIS 44, **

the judgment of foreclosure and sale without prejudice. If Deutsche Bank moves to substitute assignee MTGLQ Investors L.P. as plaintiff, pursuant to CPLR § 1021 and no other material facts change, the Court will grant the substitution of plaintiff to MTGLQ Investors L.P., which will allow the proper mortgagee, the one with standing, to receive a judgment of foreclosure and sale. (*East Coast Properties v Galang, 308 AD2d 431, 765 N.Y.S.2d 46 [2d Dept 2003]; Lincoln Savings Bank, FSB v Wynn, 7 AD3d 760, 776 N.Y.S.2d 908 [2d Dept 2004]; CPLR* [*3] *§ 1018; GOL § 13-101*).

Plaintiff Deutsche Bank has failed to move to substitute MTGLQ Investors, L.P. as plaintiff.

Two additional matters plaintiff needs to address in a renewed motion

In my recent review of the moving papers in the renewed motion, I noticed that the July 21, 2006-"affidavit of merit" was executed by Jeff Rivas, who claims to be Deutsche Bank's Vice President Default Timeline Management. On the same day, Mr. Rivas executed, before the same notary public, M. Reveles, a mortgage assignment from Argent Mortgage [**4] Company, LLC, claiming to be Argent's Vice President Default Timeline Management. Did Mr. Rivas somehow change employers on July 21, 2006 or he is concurrently a Vice President of both assignor Argent Mortgage Company, LLC and assignee Deutsche Bank? If he is a Vice President of both the assignor and the assignee, this would create a conflict of interest and render the July 21, 2006-assignment void.

Also, Mr. Rivas claims that Argent Mortgage Company, LLC is located at 1100 Town and Country Road, Suite 200, Orange, California, while Deutsche Bank has its offices at One City Boulevard West, Orange, California. Did Mr. Rivas execute the assignment at 1100 Town and Country Road, Suite 200, and then travel to One City Boulevard West, with the same notary public, M. Reveles, in tow? The Court is concerned that there may be fraud on the part of Deutsche Bank, Argent Mortgage Company, LLC, and/or MTGLQ Investors, L.P., or at least malfeasance. If plaintiff renews its motion for a judgment of foreclosure and sale, the Court requires a satisfactory explanation by Mr. Rivas of his recent employment history.

In my May 11, 2007 decision, in discussing the January 19, 2007 assignment from Deutsche [**5] Bank to MTGLQ Investors, L.P., I observed, *at 2007 NY Slip Op 50978(U) *5*, that:

the January 19, 2007 assignment has the same address for both the assignor Deutsche Bank and the assignee MTGLQ Investors, L.P., at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. The Court will not speculate about why two major financial behemoths, Deutsche Bank and Goldman Sachs share space in a West Palm Beach, Florida office suite. What is clear to this Court is that Deutsche Bank assigned the mortgage during the pendency of this application, but neglected to move to amend the caption to reflect the assignment or discontinue the foreclosure action. The Court . . . has no choice but to deny the application for a judgment of foreclosure [*4] and sale without prejudice. Plaintiff Deutsche Bank lacks standing to proceed with this action since January 19, 2007.

However, my subsequent decision, *HSBC Bank, N.A. v Cherry, 18 Misc 3d 1102 (A), 2007 N.Y. Misc. LEXIS 8279, 2007 NY Slip Op 52378(U)*, issued on December 17, 2007, observed that Scott Anderson, on June 13, 2007, as Vice President of Mortgage Electronic Registration Systems, Inc. (MERS) assigned a mortgage and note to HSBC Bank, N.A., as Trustee for various collateralized debt obligations. Mr. Anderson's assignment [**6] lists 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409 (Suite 100), as MERS address. The assignment also lists Suite 100 as the address for HSBC. Further, Mr. Anderson, two days later, on June 15, 2007, executes an "affidavit of merit" as "Senior Vice President of Residential Servicing for Ocwen Federal Bank, FSB, servicing agent of HSBC Bank, N.A."

I noted, *at 2007 NY Slip Op 52378(U) *3*, that:

with HSBC, OCWEN and MERS, joining with Deutsche Bank and Goldman Sachs at Suite 100, the Court is now concerned as to why so many financial goliaths are in the same space. The Court ponders if Suite 100 is the size of Madison Square Garden to house all of these financial behemoths or if there is a more nefarious reason for this corporate togetherness.

Therefore, if Deutsche Banks seeks to renew its motion for a judgment of foreclosure and sale, it must provide an

2008 NY Slip Op 50033U, *; 2008 N.Y. Misc. LEXIS 44, **

affidavit explaining why Suite 100 is such a popular venue for all of these corporations. Should Deutsche Bank fail to provide an adequate explanation in its affidavit, I will conclude that this corporate togetherness is evidence of corporate collusion.

Conclusion

Accordingly, it is

ORDERED, that the motion of plaintiff, DEUTSCHE BANK NATIONAL TRUST [**7] COMPANY, AS TRUSTEE OF ARGENT MORTGAGE SECURITIES, INC. ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2005-W4 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, WITHOUT RECOURSE, for a judgment of foreclosure and sale for the premises located at 78 Van Siclen Avenue, Brooklyn, New York (Block 3932, Lot 45, County of Kings), is denied without prejudice; and it is further

ORDERED, that leave is granted to plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF ARGENT MORTGAGE SECURITIES, INC. ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2005-W4 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, [*5] WITHOUT RECOURSE, to renew its motion for a judgment of foreclosure and sale for the premises located at 78 Van Siclen Avenue, Brooklyn, New York (Block 3932, Lot 45, County of Kings), only if it presents to the Court within thirty (30) days from the date of this decision and order: an affidavit from Jeff Rivas describing his employment history for the past three years; and, an affidavit explaining why it shares office space at Suite 100, 1661 Worthington Road, West Palm Beach, Florida 33409 with Goldman Sachs, HSBC Bank, N.A., Ocwen Federal [**8] Bank FSB, and Mortgage Electronic Registration Systems, Inc.

This constitutes the Decision and Order of the Court.

Hon. Arthur M. Schack

J. S. C.

# APPENDIX C

2006 N.Y. Misc. LEXIS 4036, *; 235 N.Y.L.J. 71

1 of 1 DOCUMENT

**Palisades Collection LLC v. Haque**

**64374/05**

**CIVIL COURT OF THE CITY OF NEW YORK, QUEENS COUNTY**

*2006 N.Y. Misc. LEXIS 4036; 235 N.Y.L.J. 71*

**April 13, 2006**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation sued defendant individual, seeking damages for breach of contract and an account stated. The court held a bench trial.

**OVERVIEW:** Although it was well settled that the absence of an underlying agreement, if established, did not relieve a defendant of an obligation to pay for goods and services received on credit, the corporation faced an additional impediment in pursuing its breach of contract claim as it failed to provide any admissible evidence that its alleged assignor and the individual had entered into a contract pursuant to which the individual was obligated to pay for the additional charges for which the corporation had sued. The corporation had not proven by a preponderance of the evidence that the individual's account was in fact assigned to the corporation. Similarly, the corporation, as an alleged assignor, failed to establish the requisite elements for recovery on a theory of account stated as there was no evidence that the individual had assented, expressly or impliedly, that he was indebted to the corporation or the alleged assignor in the sum claimed, and that he had undertaken, by express or implied promise, to pay that sum. Thus, the complaint was to be dismissed.

**OUTCOME:** The individual was awarded a judgment dismissing the complaint.

**JUDGES:** [*1] Judge Pineda-Kirwan

**OPINION BY:** Pineda-Kirwan

**OPINION**

On January 10th and 19th, 2006, a non-jury trial was held in this action alleging damages for breach of contract and an account stated. After trial, the Court reserved decision. The Court relies on its own notes for this decision.

According to the complaint verified by plaintiff's attorney, plaintiff, alleged to be a New Jersey corporation, brings this action as the owner of "AT&T WIRELESS, Acct # 002500000039050943." The first cause of action alleges that plaintiff and defendant entered into a goods and services contract pursuant to which defendant agreed to pay plaintiff all amounts charged to said account. The complaint alleges that "upon information and belief" the agreement containing the terms and conditions governing the use of the charge account, was mailed to defendant, and, further, "upon information and belief" defendant incurred charges of $ 4,075.40 by the use of the account.

In its second cause of action, for an account stated, plaintiff alleges that it "and/or AT&T WIRELESS" mailed monthly statements to defendant, and, defendant received and retained those statements without objection.

Damages in the amount of $ 6,144.49 [*2] are claimed, an amount that represents the balance on the account and interest from November 10, 1999.

Pro se defendant's answer states only that defendant would like to see a judge and that he needs a lawyer. Defendant testified at trial through the assistance of a Bengali interpreter. At trial, defendant's motion for leave to amend his answer to add a general denial was granted.

Findings of Fact

Plaintiff's witness, Joanne Bergman testified that she is employed by plaintiff as its vice-president of legal affairs and is the custodian of plaintiff's books and records. Ms. Bergman further testified that plaintiff is a wholly owned subsidiary of Aster Funding, Inc. On the second day of testimony, the witness stated that she was "affiliated" with plaintiff. While it was not clear from the witness' testimony whether she is employed by plaintiff or by Aster Funding, Inc., defendant did not object to her testimony. Ms. Bergman testified that plaintiff is in the business of purchasing original debts from creditors. According to the witness' testimony, and in contradiction to the allegations in the complaint, AT&T Wireless, not

plaintiff, and defendant entered into a contract for cellular [*3] telephone service.

Ms. Bergman testified that plaintiff is authorized to perform any and all acts relating to certain accounts assigned to plaintiff by AT&T Wireless pursuant to a limited power of attorney and a bill of sale and assignment of benefits. These two documents, both dated July 2004, were admitted into evidence as plaintiff's Exhibit 1A and 1B. These documents, however, name, as the assignee, an entity which is a Delaware limited liability company, not a New Jersey Corporation, as this plaintiff alleges itself to be. Nor do the documents contain an indication that consideration was paid for the assignment and neither document is executed by plaintiff as the assignee. Further the assignment refers to a "Purchase and Sale Agreement" and indicates that an "Account Schedule" is attached to that agreement. Plaintiff did not seek to introduce the "Purchase and Sale Agreement" with its annexed schedule into evidence.

In contrast to the wording of the assignment which references the "Purchase and Sale Agreement" and its annexed schedule of accounts, the witness testified that the purchased accounts came to plaintiff by electronic transmission. Ms. Bergman testified credibly that [*4] the electronic statements were received on December 13, 2005. Ms. Bergman testified that defendant's account was included in those purchased by plaintiff. Plaintiff then sought to introduce into evidence a document, dated January 9, 2006, that the witness testified was the hard copy of the account summary generated by AT&T Wireless and electronically sent to plaintiff pertaining to this defendant. The witness testified that plaintiff did not have copies of any statements from AT&T Wireless that were allegedly sent to defendant.

Defendant Mohammad Haque objected stating that the document was not plaintiff's document but was created from other sources including his bill which he showed to plaintiff at an earlier court conference.

Plaintiff then sought to admit spreadsheets as proof of the transaction between plaintiff and AT&T Wireless, and again defendant objected.

Inasmuch as the "mere filing of papers received from other entities, even if they are retained in the regular course of business," is insufficient to lay a foundation for the business records exception to hearsay rule, the objections were sustained and the documents were not admitted. (See *CPLR 4518 [a]*; [*5] *Kane v. Triborough Bridge & Tunnel Auth, 8 A.D.3d 239, 778 N.Y.S.2d 52 [2d Dept 2004]*; *Standard Textile Company v. National Equipment Rental, 80 A.D.2d 911, 437 N.Y.S.2d 398 [2d Dept 1981]* .) Ms. Bergman testified that she was not familiar with AT&T's billing practices and data entry. Thus, she could not lay a proper foundation for the admission of these documents. (Cf *People v. Cratsley, 86*

*N.Y.2d 81, 653 N.E.2d 1162, 629 N.Y.S.2d 992 [1995].*)

Plaintiff attempted to introduce into evidence a document entitled "Terms and Conditions" which does not name defendant, contains no specific terms as to this defendant's particular account, and contains no signatures, claiming that AT&T Wireless sent it to defendant with the information regarding defendant's account. Ms. Bergman testified that plaintiff received it from AT&T Wireless along with the electronic transmission. In light of the earlier testimony that the account came to plaintiff via electronic transmission, it was not clear from the testimony how the "Terms and Conditions" document was sent along with the other information.

Defendant examined the document and objected on the grounds that the document was not his contract with AT&T Wireless as it did not [*6] contain the terms of his agreement and that he had never receive d such a document from AT&T Wireless. As plaintiff could not demonstrate that AT&T Wireless ever sent defendant this document, as the document was introduced to prove the truth of its contents, and as plaintiff failed to lay an adequate foundation for its admission as a business record, the objection was sustained. (*CPLR 4518 [a]*; *Kane v. Triborough Bridge & Tunnel Auth, 8 A.D.3d 239, 778 N.Y.S.2d 52, supra*.)

Plaintiff again sought to introduce the "Terms and Conditions" document by claiming that AT&T Wireless sent the document to plaintiff as part of the purchase of defendant's account. Defendant again objected on the basis that it was not his contract, and the objection was again sustained. Plaintiff essayed several more times to introduce the "Terms and Conditions" contract, defendant objected, and each time the objection was sustained. Thus, plaintiff was unable to offer evidence of the terms of the agreement between AT&T Wireless and defendant.

Plaintiff's witness then testified about the acc ount purchased from AT&T Wireless regarding this defendant, stating his name, address, cellular telephone [*7] number and the balance on his account which the witness testified was $ 4,152.95.

After this witness concluded her testimony, plaintiff, pursuant to *CPLR 4401*, moved for a judgment on its breach of contract and account stated causes of action. The motion was denied. Plaintiff then called defendant as a witness.

Defendant testified that he had an account with AT&T Wireless that he obtained through a P.C. Richards store in the summer of 1998. When asked about the terms of the account, defendant testified credibly that he paid $ 24.99 per month plus tax for the service and the terms further provided that he had free evenings after 9:00 PM and free weekends airtime. Mr. Haque stated that he

received monthly bills from AT&T for the agreed upon amount and he regularly paid that amount.

Having been served with a subpoena for his AT&T Wireless bills, defendant produced a bill and plaintiff introduced the bill as Exhibit 4. The bill is dated August 20, 1999 and reflects a balance in the amount of $ 3,520.43. Defendant testified credibly that this was the only bill he still had from AT&T Wireless.

When asked if he paid the balance on the account, defendant testified [*8] that he paid $ 24.99 plus tax each month for twelve months. He further testified that, when he received the bill in July 1999, in the amount of $ 1,326.54, which, for the first time ever, charged him for nighttime and weekend service, he, together with the assistance of a friend who spoke better English, telephoned AT&T Wireless from his home, to complain about the bill. The defendant testified credibly that he was told that his twelve month contract had run out but that if he wanted it reinstated retroactively, with the same terms as before, he had only to pay $ 56.00. The witness testified that he paid that amount as directed and that he continued to use the telephone.

It is noted that Exhibit # 4 reflects that the monthly charge is $ 24.99 and indicates that an amount of $ 56.00 having been paid. It further reflects that of the many calls itemized calls listed, the vast majority were made after 9:00 PM. It is not evident from the bill which days were weekends.

Defendant was then asked if he sent a writing to contest the amount owed on the August 20, 1999 bill, and the defendant testified credibly that he did not, but that he called AT&T Wireless to complain and was told that he [*9] conversations were being recorded. Mr. Haque testified that for most of those phone calls he would stand next to a friend who interpreted for him.

Plaintiff rested and defendant then testified on direct. Defendant stated that in June or July 1998, he and a friend were shopping in P.C. Richards store in order to purchase a video cassette recorder. The witness stated that they were approached by a salesman about purchasing a phone and contracting with AT&T Wireless at the rate of $ 24.99 per month with free weekend and evening cellular service and that they both did so. The witness testified credibly that he paid for the phone with his American Express card and that he then paid the $ 24.99 per month with tax for an approximate total of $ 31.00 each month for the next year. Mr. Haque testified that he made his calls after 9:00 PM and on weekends to use the free service. The witness testified that he did not receive a "Terms and Conditions" contract when he purchased the phone and service at P.C. Richards and that no such document was ever sent to him.

The Court credits the witness' testimony that in July 1999, when he saw the bill for more than $ 1,300, he called AT&T Wireless to complain [*10] and that from that conversation he understood that he could reinstate the prior terms retroactively and erase the balance by paying $ 56.00. Mr. Haque was credible when he stated that when a second bill was sent dated August 20, 1999 which did not correct the previous bill, and contained new charges of more than $ 2,000, he again called to complain. When the third bill came without reducing the amount, defendant testified that he called and cancelled his service. The witness' testimony that he made his calls after 9:00 PM and on weekends was supported by the bill dated August 20, 1999.

Defendant testified that on earlier court dates, plaintiff's attorney asked him for copies of his bill which he provided. Defendant testified that he had asked plaintiff for copies of earlier bills put plaintiff did not so provide. Defendant stated that the only contract he ever had with AT&T Wireless was to pay $ 24.99 per month plus tax with weekends and evenings after 9:00 PM free.

As above stated, defendant's motion to amend his answer to add a general denial was granted. Notwithstanding the lack of any allegation regarding an assignment in the complaint, plaintiff did not move to conform the pleadings [*11] to the evidence. (CPLR 3025 [c].)

Conclusions of Law

It is well settled that to create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. (See *Martin Delicatessen v. Schumacher, 52 N.Y.2d 105, 417 N.E.2d 541, 436 N.Y.S.2d 247 [1981]*). This requirement allows a Court to effectively enforce the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other. (See *Express Indus & Terminal Corp. v. NYS DOT, 93 N.Y.2d 584, 715 N.E.2d 1050, 693 N.Y.S.2d 857 [1999]*.)

While it is well settled that the absence of an underlying agreement, if established, does not relieve a defendant of his obligation to pay for goods and services received on credit, (*Citibank (SD) NA v. Roberts, 304 A.D.2d 901, 757 N.Y.S.2d 365 [3rd Dept 2003]*,) that is not the sole impediment to this plaintiff's case. Here, without any admissible evidence from its alleged assignor, plaintiff was unable to establish that AT&T Wireless and defendant entered into a contract pursuant to which defendant was obligated to pay for the additional charges for which defendant now sues.

Further, in [*12] light of the dearth of evidence presented at trial regarding the assignment and the infirmities therein, plaintiff did not prove by a preponderance of the evidence that defendant's account was in fact assigned to plaintiff. (See *Copelco Capital, Inc v. Packaging Plus Services, Inc, 243 A.D.2d 534, 663*

2006 N.Y. Misc. LEXIS 4036, *; 235 N.Y.L.J. 71

*N.Y.S.2d 104 [2d Dept. 1997]; Citibank (SD), NA v. Martin, 11 Misc. 3d 219, 807 N.Y.S.2d 284, 2005 NY Slip Op 25536 [Civ Ct NY County].)* Had plaintiff been able to prove that much, as it is undisputed that defendant did not pay the monthly charge of $ 24.99 for August and September, plaintiff would have been entitled to a judgment for those amounts.

Similarly, plaintiff, as an alleged assignor, failed to establish the requisite elements for recovery on a theory of account stated. (*Heelan Realty & Dev Corp v. Ocskasy, 27 A.D.3d 620, 812 N.Y.S.2d 124, 2006 NY Slip Op 2166 [2d Dept 2006].)* There was no evidence before the Court that defendant assented, expressly or impliedly, that he was indebted to plaintiff, or, for that matter, AT&T Wireless, in the sum claimed, and undertook, by express or implied promise, to pay it. (*Tridee Assoc., Inc. v. Bd. of Educ. of City of New York, 22 A.D.3d 833, 803 N.Y.S.2d 706 [2d Dept 2005].)*

Holding of [*13] the Court

Accordingly, the Court awards defendant a judgment dismissing the complaint.

# APPENDIX D

1210V5

**Time of Request:** Tuesday, November 13, 2007  11:13:15 EST
**Client ID/Project Name:** 430
**Number of Lines:** 2694
**Job Number:**     1821:59390016

Research Information

**Service:**   Terms and Connectors Search
**Print Request:** All Documents 1-406
**Source:** IL Public Records, Combined
**Search Terms:** date(>4/1/07) & (Hawker /2 fin!) and not (palisades)

**Send to:**   EDELMAN, DAN
               EDELMAN COMBS & LATTURNER
               120 S LA SALLE ST FL 18
               CHICAGO, IL 60603-3593

1. ADAMS; KATIE M, 06M1 0203323, 8/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

2. AGUILAR; KEELY L, et al., 06M1 0199278, 9/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

3. ALANIZ; MARIA, 06M1 0181407, 5/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... GE MONEY BANK      **HAWKER FINANCIAL** CORPORATION

4. ALLEN; BARBARA S, et al., 07M1 0114842, 4/2/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

5. ALLEN,BARBARA S, 07M1114842, CIVIL JUDGMENT, 04/02/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

6. ALLEN; LENA M, 06M1 0184527, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... MONEY BANK      ARROW **FINANCIAL** SRVCS      **HAWKER FINANCIAL**

7. ALLEN;ROZETTA, 07SC 0001480, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

8. ALLEN,ROZETTA, 07SC1480, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

9. ALLEN; TRAVIS L, 06M1 0183870, 4/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... SVCS      HOUSHOLD BANK      **HAWKER FINANCIAL** CORP

10. ANDERSON,DELORES R, 07SC349, SMALL CLAIMS JUDGMENT, 05/30/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

11. AQUIRRE,UBALDO, 07SC294, SMALL CLAIMS JUDGMENT, 05/24/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

12. ASCHENBRENNER,DEBORA, 2007SC60, SMALL CLAIMS JUDGMENT, 04/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

13. ASCHENBRENNER;DEBORA, 07SC 0000060, 4/18/2007, JUDGMENT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

14. AUSTIN; TIMOTHY T, 06M1 0181634, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... SERVICES      PROVIDIAN      GA **FINANCIAL** TRUST      **HAWKER FINANCIAL** CORP

15. BABCOCK;VICKIE L, 07SC 0001659, 5/29/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

16. BACON;ANGELA R, 07SC 0002399, 5/11/2007, JUDGMENT, SANGAMON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

17. BACON,ANGELA R, 2007SC2399, SMALL CLAIMS JUDGMENT, 05/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

18. BALLA,BARBARA A, 07SC1954, SMALL CLAIMS JUDGMENT, 05/23/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

19. BALLOG,DIANE, 07M1105266, CIVIL JUDGMENT, 05/15/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

20. BERMUDEZ;KIMBERLY, 07SC 0000819, 5/11/2007, JUDGMENT, CHAMPAIGN COUNTY, ILLINOIS
**HAWKER FINANCIAL**

21. BERMUDEZ,KIMBERLY, 07SC819, SMALL CLAIMS JUDGMENT, 05/11/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORPORATION

22. BERNAL; RICHARD R, 07M1 0148254, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

23. BERNAL,RICHARD R, 07M1148254, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

24. BERNS; RICH, et al., 06M1 0199978, 4/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

25. BERNS,RICH, 06M1199978, CIVIL JUDGMENT, 04/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

26. BERRY;JACKIE, 07SC 0000872, 4/27/2007, JUDGMENT, ROCK ISLAND COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

27. BERRY,JACKIE, 2007SC872, SMALL CLAIMS JUDGMENT, 04/27/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

28. BINENE;ANTHONY Z, 07SC 0001483, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

29. BINENE,ANTHONY Z, 07SC1483, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

30. BOGGUESS,ANGELA A, 07M1140697, CIVIL JUDGMENT, 06/07/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

31. BOOKER; WILLIE, 06M1 0187499, 4/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

32. BOWMAN; TINA M, 06M1 0181642, 4/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
... FINANCIAL SERVICES        DAG **FINANCIAL** TRUST        **HAWKER FINANCIAL** CORP

33. BRADCHULIS,TAMMY L, 07SC002568, SMALL CLAIMS JUDGMENT, 05/14/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

34. BRADFORD,SHELLY, 06SC704, SMALL CLAIMS JUDGMENT, 04/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

35. BREM;ALICE M, 06SC 0001782, 4/5/2007, JUDGMENT, TAZEWELL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

36. BROWN; DELORIS, et al., 07M1 0105406, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

37. BROWN,MARVIN L, 07SC107, SMALL CLAIMS JUDGMENT, 04/09/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

38. BROWN;MOSE L, 07SC 0001346, 4/3/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

39. BROWN,MOSE L, 07SC001346, SMALL CLAIMS JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

40. BUCKLEY,JILL, 07SC000344, SMALL CLAIMS JUDGMENT, 05/07/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

41. BURKS; ERVINA, 07M1 0124957, 9/24/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL**

42. BUSH; EUGENE, 07M1 0105196, 4/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

43. BUSH,EUGENE Jr, 07M1105196, CIVIL JUDGMENT, 04/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

44. BUSSE; KENNETH G, 06M1 0200499, 4/10/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

45. BUSSE,KENNETH G, 06M1200499, CIVIL JUDGMENT, 04/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

46. BUSSE,KENNETH J, 06M1200499, CIVIL JUDGMENT, 04/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

47. BUTTS;LINDA A, 07SC 0000291, 5/23/2007, JUDGMENT, OGLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

48. BYRD; ADRIAN L, 07M1 0105153, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

49. CAIN; WILSON, 06M1 0199962, 10/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

50. CANNON; BONNIE, 07M1 0142403, 6/19/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

51. CANNON,BONNIE, 07M1142403, CIVIL JUDGMENT, 06/19/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

52. CARDOZA,HAROLD J, 07SC1952, SMALL CLAIMS JUDGMENT, 05/23/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

53. CASEY;SARAH J, 06SC 0007371, 7/6/2007, GARNISHMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

54. CASTELLANO,NORMA G, 07SC003772, SMALL CLAIMS JUDGMENT, 05/04/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

55. CASTLE;D, 07SC 0001295, 5/16/2007, JUDGMENT, PEORIA COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

56. CASTLE,D, 07SC1295, SMALL CLAIMS JUDGMENT, 05/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

57. CASTRO; VICENTE, 07M1 0104017, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL**

58. CLAIR; JONATHAN W., 07SC 0002467, 5/2/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

59. CLAIR,JONATHAN W, 07SC2467, SMALL CLAIMS JUDGMENT, 05/02/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

60. CLEVENGER,SHARON, 07SC390, SMALL CLAIMS JUDGMENT, 06/07/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

61. COCKRELL;HARRY V, 06SC 0001833, 4/26/2007, JUDGMENT, VERMILION COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

62. COCKRELL,HARRY V, 06SC1833, SMALL CLAIMS JUDGMENT, 04/26/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

63. COLE; SONJI F, et al., 06M1 0199979, 10/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

64. COLTER,BRUCE E, 07SC718, SMALL CLAIMS JUDGMENT, 05/08/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

65. CONNER; VALERIE A, 06M1 0201705, 5/1/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

66. CONNER,VALERIE A, 06M1201705, CIVIL JUDGMENT, 05/01/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

67. CONSTANT,LAURA J, 07SC1479, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

68. COOLEY,THOMAS, 07M1118279, CIVIL JUDGMENT, 06/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

69. COOPER; NADINE J, 07M1 0106094, 6/21/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

70. CORREA; MICHAEL, 06M1 0185808, 4/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... HOUSEHOLD BANK        ARROW **FINANCIAL** SRVCS        **HAWKER FINANCIAL**

71. COSSRA;CATHERINE, 07SC 0002376, 5/2/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL**

72. COX; JOHNNETTA, 07M1 0147961, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

73. COX,JOHNNETTA, 07M1147961, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

74. CRISMON;MARY A, 07SC 0000916, 6/19/2007, JUDGMENT, TAZEWELL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

75. CRISMON,MARY A, 07SC916, SMALL CLAIMS JUDGMENT, 06/19/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

76. CUNNINGHAM; LEONA, 06M1 0181423, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... SERVICES        PROVIDIAN        DAG **FINANCIAL** TRUST        **HAWKER FINANCIAL** CORP

77. DAVIS; RICKY, 07M1 0117625, 10/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

78. DE LA TORRE; EDWARD, 06M1 0197287, 5/31/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

79. DENEUFBOURG; MICHAEL, 07M1 0197488, 4/3/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

80. DENEUFBOURG,MICHAE, 06M1197488, CIVIL JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

81. DERBIGNY;CLAREECE L, 07SC 0001480, 4/4/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

82. DERBIGNY,CLAREECE L, 07SC001480, SMALL CLAIMS JUDGMENT, 04/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

83. DERNING; DON R, 07M1 0148307, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANICAL** CORP

84. DERNING,DON R, 07M1148307, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

85. Deutsche Bank Natl Tr Co v. Washington;Betty, et al., 07CH 0030736, 10/24/2007, FORECLOSURE ACTION - Mortgage, COOK COUNTY, ILLINOIS
... Capital One Bank        **Hawker Financial** Corp

86. DICKEY,DAVID H, 07SC58, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

87. DICKEY,MARCI L, 07SC58, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

88. DONALDSON; VIRGIL, 06M1 0200465, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

89. DOUTHARD; LUTHER V, 07M1 0148296, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

90. DOUTHARD,LUTHER V, 07M1148296, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

91. DRACH,EDWARD G Jr, 07SC2149, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

92. DRIMMON; ALLENE D, et al., 07M1 0104578, 9/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

93. DUCHARME;MICHAEL, 06SC 0002497, 4/6/2007, JUDGMENT, KANKAKEE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

94. DUCHARME,MICHAEL J, 06SC2497, SMALL CLAIMS JUDGMENT, 04/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

95. DUNBAR; EDGAR, 07M1 0105876, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

96. DURR; DONNY, 06M1 0184067, 10/17/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**        ARROW FINANCIAL SRVCS        ...

97. DYE,DARCY, 06SC772, SMALL CLAIMS JUDGMENT, 04/24/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

98. EARL;STEPHANIE, 07SC 0002695, 6/11/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

99. EDWARDS; LESTER M, 07M1 0148348, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

100. EDWARDS,LESTER Jr, 07M1148348, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

101. EID;DOUGLAS A, 07SC 0001519, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

102. EID,DOUGLAS A, 07SC1519, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPO

103. ESTES; PEGGY, 06M1 0199946, 4/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

104. ESTES,PEGGY, 06M1199946, CIVIL JUDGMENT, 04/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

105. FIELDS;VICTOR C, 07SC 0000593, 5/16/2007, JUDGMENT, DEKALB COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

106. FIELDS,VICTOR C, 07SC593, SMALL CLAIMS JUDGMENT, 05/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

107. FORD;ADRIENNE P, 07SC 0002583, 6/4/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

108. FOWLER; SHIRLEY A, 07M1 0105856, 10/2/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

109. FOX; CARRIE, 06M1 0200134, 4/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

110. FOX,CARRIE, 06M1200134, CIVIL JUDGMENT, 04/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

111. FRANK; FAYE A, 06M1 0190717, 4/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
ARROW **FINANCIAL** SERVICES      **HAWKER FINANCIAL** CORPORATION

112. GALLEGOSRAWLES;SONYA M, 06SC 0000651, 5/30/2007, JUDGMENT, OGLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

113. GARCIA; ANTOINETTA J., 06SC 0007399, 5/8/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

114. GARCIA;MARIA M, 07SC 0001520, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

115. GARCIA,MARIA M, 07SC1520, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPO

116. GATHING;FELECIA, 06SC 0006219, 4/16/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

117. GIBSON;SUSAN A, 07SC 0001300, 5/16/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

118. GILBERT; YOLANDA S, et al., 06M1 0199643, 7/16/2007, GARNISHMENT, COOK COUNTY, ILLINOIS -
1ST MUNICIPAL DISTRICT

**HAWKER FINANCIAL** CORP

119. GILE,KATHRYN A, 2007SC1193, SMALL CLAIMS JUDGMENT, 06/08/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

120. GLOVER; STANLEY, et al., 07M1 0105848, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

121. GOBLE,JASON C, 07SC18, SMALL CLAIMS JUDGMENT, 07/09/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

122. GOMEZ,JOSE, 07SC275, SMALL CLAIMS JUDGMENT, 07/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

123. GRANT,THOMAS E, 07M1118279, CIVIL JUDGMENT, 06/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

124. GRIFFIN;MARY E, 07SC 0000420, 5/21/2007, JUDGMENT, WHITESIDE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

125. GRIFFIN,MARY E, 07SC420, SMALL CLAIMS JUDGMENT, 05/21/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

126. GRIMES,SHERALEE, 2007SC1104, SMALL CLAIMS JUDGMENT, 05/25/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

127. HAGGE;LUELLA C, 06SC 0003655, 4/16/2007, JUDGMENT, MCHENRY COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

128. HAMMOND; STEPHEN B, 06M1 0197468, 4/3/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

129. HAMMOND; GARY L, 07M1 0126152, 5/29/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

130. HAMMOND,STEPHEN B, 06M1197468, CIVIL JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

131. HAMMOND,GARY L, 07M1126152, CIVIL JUDGMENT, 05/29/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

132. HARGIS,KRISTINA, 07SC302, SMALL CLAIMS JUDGMENT, 06/12/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

133. HART,BRUCE A, 07SC83, SMALL CLAIMS JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

134. HAWKER FINANCIAL CORP v. LEBLANC;LARRY L, et al., 07SC 0002805, 4/23/2007, CIVIL SUIT, LAKE
COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

135. HAWKER FINANCIAL CORP v. LYON;AMELIA, 07SC 0003138, 4/19/2007, CIVIL SUIT, WILL COUNTY,
ILLINOIS

**HAWKER FINANCIAL** CORP

136. HAWKER FINANCIAL CORP v. TUCKER;DEBRA M, 07SC 0002601, 4/13/2007, CIVIL SUIT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

137. HAWKER FINANCIAL CORP v. HOLT;VANESSA L, 07SC 0000884, 4/10/2007, CIVIL SUIT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

138. HAWKER FINANCIAL CORP v. LANKFORD;NICOLE L, 07SC 0000892, 4/10/2007, CIVIL SUIT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

139. HAWKER FINANCIAL CORP v. DICKERSON;DEMETRIC, 07SC 0001063, 5/2/2007, CIVIL SUIT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

140. HAWKER FINANCIAL v. CHAGOYA;JIMMY, et al., 07SC 0003027, 5/2/2007, CIVIL SUIT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL**

141. HAWKER FINANCIAL CORP v. SWIATKIEWICZ;MARY J, 07SC 0003441, 4/30/2007, CIVIL SUIT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

142. HAWKER FINANCIAL CORP v. CASTELLANO;NORMA G, 07SC 0003772, 5/4/2007, CIVIL SUIT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

143. HAWKER FINANCIAL CORP v. CONSTANT;LAURA J, 07SC 0001479, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

144. HAWKER FINANCIAL CORP v. ALLEN;ROZETTA, 07SC 0001480, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

145. HAWKER FINANCIAL CORP v. RIOS;FRANCISCO, 07SC 0001481, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

146. HAWKER FINANCIAL CORP v. LOPEZ;JUAN, 07SC 0001482, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

147. HAWKER FINANCIAL CORP v. BINENE;ANTHONY Z, 07SC 0001483, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

148. HAWKER FINANCIAL CORP v. GRAY;DUANE, 07SC 0001484, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

149. HAWKER FINANCIAL CORP v. EID;DOUGLAS A, 07SC 0001519, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

150. HAWKER FINANCIAL CORP v. GARCIA;MARIA M, 07SC 0001520, 4/2/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

151. HAWKER FINANCIAL CORP v. TIRUVAIPETA;MURALIDHAR, 07SC 0001658, 4/16/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

152. HAWKER FINANCIAL CORP v. BABCOCK;VICKIE L, 07SC 0001659, 4/16/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

153. HAWKER FINANCIAL CORP v. DYKES;SUSAN E, 07SC 0001711, 4/20/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

154. HAWKER FINANCIAL CORP v. PHILLIPS;HAZEL L, 07SC 0001712, 4/20/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

155. HAWKER FINANCIAL CORP v. DUNCAN;VICKI A, 07SC 0001825, 4/27/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

156. HAWKER FINANCIAL CORP v. DOWTHARD;TYRONE, 07SC 0001826, 4/27/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

157. HAWKER FINANCIAL CORP v. HOLLIGAN;BARRY, 07SC 0001827, 4/27/2007, CIVIL SUIT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

158. HAYES,JEANNIE, 2006SC844, SMALL CLAIMS JUDGMENT, 04/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

159. HAYNES; REGINA L, 07M1 0105791, 8/14/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

160. HAYNIE;WYNETTA L, 07SC 0001930, 6/19/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

161. HAYNIE,WYNETTA L, 07SC1930, SMALL CLAIMS JUDGMENT, 06/19/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPO

162. HEIDEN; PATRICIA JO, et al., 07M1 0104986, 10/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

163. HERRON; ALBERT P, 07M1 0105181, 8/10/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

164. HODGES;DORIS, 07AR 0000562, 6/5/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

165. HOLLIGAN;BARRY, 07SC 0001827, 6/5/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN

**HAWKER FINANCIAL** CORP

166. HOLLIGAN,BARRY, 07SC1827, SMALL CLAIMS JUDGMENT, 06/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

167. HOLM,DE ETTE A, 07SC727, SMALL CLAIMS JUDGMENT, 05/09/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

168. HOLM;DEETTE A, 07SC 0000727, 5/9/2007, JUDGMENT, KANKAKEE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

169. HOLMAN;KENNETH G, 07SC 0002694, 6/11/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

170. HOLMES;CHARLES, 07SC 0000740, 5/9/2007, JUDGMENT, KANKAKEE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

171. HOLMES,CHARLES, 07SC740, SMALL CLAIMS JUDGMENT, 05/09/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

172. HOLMES; MINNETTE, 06M1 0184063, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
... BUY        HOUSEHOLD BANK        **HAWKER FINANCIAL** CORP

173. HOLT,VANESSA L, 2007SC884, SMALL CLAIMS JUDGMENT, 05/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

174. HOLT;VANESSA L, 07SC 0000884, 5/10/2007, JUDGMENT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

175. HOLZBAUER; MARGARET S, 07M1 0105814, 10/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

176. HOWARD; RUTH L, et al., 06M1 0198263, 6/7/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

177. HOWARD;SHARON, 07SC 0000098, 8/10/2007, JUDGMENT, MCHENRY COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

178. HOWE;MIKE G, 07SC 0000367, 6/20/2007, JUDGMENT, GRUNDY COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

179. ICE;GLORIA J, 07SC 0000070, 5/21/2007, JUDGMENT, VERMILION COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

180. ICE,GLORIA J, 07SC70, SMALL CLAIMS JUDGMENT, 05/21/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

181. JACKSOB;SANDRA A, 07SC 0001927, 6/19/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

182. JACKSON; MARZETTE, 07M1 0104682, 8/10/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

183. JAGELAVICIUS; SAULIUS, 07M1 0105831, 8/14/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

184. JANN,HERMAN J Jr, 07SC1953, SMALL CLAIMS JUDGMENT, 05/23/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

185. JARRETT,JOVAN, 06M1199237, CIVIL JUDGMENT, 04/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

186. JOHNSON; HAZEL A, et al., 07M1 0104472, 7/12/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

187. JOHNSON; KAREN M, et al., 06M1 0196513, 7/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

188. JOHNSON; KIRSTEN, 07M1 0106310, 9/13/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

189. JOHNSON,HAZEL A, 07M1104472, CIVIL JUDGMENT, 07/12/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

190. JONES; CORRINE, 07M1 0132748, 5/29/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

191. JONES,CORRINE, 07M1132748, CIVIL JUDGMENT, 05/29/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

192. KHAN; TEHSEEN S, 06M1 0183869, 4/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... HOUSEHOLD BANK       ARROW **FINANCIAL** SRVCS       **HAWKER FINANCIAL**

193. KIELA; AUDRONE, 06M1 0199989, 4/3/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

194. KIELA,AUDRONE, 06M1199989, CIVIL JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

195. KINARD;ANGELA, 07SC 0002697, 6/11/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

196. KING;GLORIA J, 07SC 0001988, 4/25/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

197. KING,GLORIA J, 07SC001988, SMALL CLAIMS JUDGMENT, 04/25/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

198. KORNEWALD;CHARLES W, 07SC 0000214, 4/2/2007, JUDGMENT, WHITESIDE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

199. KORNEWALD,CHARLES W, 07SC214, SMALL CLAIMS JUDGMENT, 04/02/2007, IL JUDGMENTS AND LIENS

**HAWKER FINANCIAL** CORP

200. KUTA;JOHN J, 06SC 0002403, 7/10/2007, JUDGMENT, LASALLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

201. LADAGE,THOMAS L, 06SC1076, SMALL CLAIMS JUDGMENT, 04/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

202. LAMARRE; HENRY R, 06M1 0200524, 7/5/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

203. LANKFOD,NICOLE L, 2007SC892, SMALL CLAIMS JUDGMENT, 05/10/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

204. LANKFOD;NICOLE L, 07SC 0000892, 5/10/2007, JUDGMENT, MACON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

205. LERCH; JOHN E, 06M1 0203262, 10/29/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

206. LEVESQUE,LILA K, 07SC593, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

207. LOPEZ;HENRY, 07SC 0002088, 4/26/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

208. LOTT,ROBERT F Sr, 07SC2148, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

209. LYNN;TAMEKA L, 07SC 0002674, 7/5/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

210. LYNN,TAMEKA L, 07SC2674, SMALL CLAIMS JUDGMENT, 07/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

211. LYON;AMELIA, 07SC 0003138, 5/29/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

212. LYON,AMELIA, 07SC003138, SMALL CLAIMS JUDGMENT, 04/19/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

213. MACKAY;ALLEN C, 07SC 0002681, 5/18/2007, JUDGMENT, SANGAMON COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

214. MACKAY,ALLEN C, 2007SC2681, SMALL CLAIMS JUDGMENT, 05/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

215. MARSH;RONALD A, 07SC 0001159, 6/4/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

216. MARSHALL,KATE L, 07SC2197, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

217. MARTIN; LANEQUIT, 06M1 0184615, 6/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**        ARROW FINANCIAL SRVCS        ...

218. MARTINEZ;ANGELA, 07SC 0001039, 6/5/2007, JUDGMENT, LASALLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

219. MARTINEZ;MATTHEW A, 07SC 0001217, 4/2/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

220. MARTINEZ,MATTHEW A, 07SC1217, SMALL CLAIMS JUDGMENT, 04/02/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

221. MARTINLYONS,SHELLY, 07M1127104, CIVIL JUDGMENT, 05/07/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

222. MATARIYEH; ISSA A, 07M1 0105154, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

223. MAYE,LISA S, 07SC000308, SMALL CLAIMS JUDGMENT, 04/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

224. MCDONALD; JUDI, 06SC 0006522, 5/7/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

225. MCKANNA;KENNETH M, 06SC 0008259, 4/9/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

226. MCKINLEY; TIMOTHY D, 06M1 0181422, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... SERVICES        PROVIDIAN        DAG **FINANCIAL** TRUST        **HAWKER FINANCIAL** CORP

227. MCKITRICK,ROLLIE D, 2007SC1299, SMALL CLAIMS JUDGMENT, 06/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

228. MEADE;TINA C, 07SC 0002585, 6/4/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

229. MILEHAM,JUDY A, 07SC164, SMALL CLAIMS JUDGMENT, 05/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

230. MITCHELL; AUDREY, 06M1 0181649, 4/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
ARROW **FINANCIAL** SRVCS        **HAWKER FINANCIAL**        GE MONEY BANK ...

231. MITCHELL;DONNA R, 07SC 0001665, 4/16/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

232. MOCHALSKI; JOSEPH D, 07M1 0148340, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

233. MOCHALSKI,JOSEPH D, 07M1148340, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

234. MOODY,MICHELLE R, 6SC6644, SMALL CLAIMS JUDGMENT RELEASE, 01/08/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP
**07/13/2007**

235. MORALES; ELBA, 06M1 0198691, 4/3/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

236. MORALES,ELBA, 06M1198691, CIVIL JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

237. MORGAN; DANCY L, 06M1 0186009, 5/23/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

238. MORGAN;KATHY, et al., 07SC 0001506, 4/10/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

239. MOZINGO; THOMAS N, 06M1 0198797, 6/7/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

240. MUHAMMED; REGINALD, 07M1 0148293, 6/29/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

241. MUHAMMED,REGINALD, 07M1148293, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

242. MUNOZ; LUIS, 06M1 0184333, 4/4/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
MARSHALL FIELDS       ARROW **FINANCIAL** SERVICES       **HAWKER FINANCIAL** CORP

243. MURPHY; JOHN D, 06M1 0203748, 8/27/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANICAL** CORP

244. MYKTSEI; NATALIE S, 07M1 0104701, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

245. NAJARRO;VICTOR MANUEL, et al., 07SC 0001608, 4/16/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

246. OGLE,DEBORAH K, 07SC2146, SMALL CLAIMS JUDGMENT, 06/13/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

247. OLIN;TERRANCE, 06SC 0001345, 5/30/2007, JUDGMENT, DEKALB COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

248. OLIN,TERRANCE, 06SC1345, SMALL CLAIMS JUDGMENT, 05/30/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

249. ORTEGA;TAMMI O, 06SC 0007585, 4/9/2007, GARNISHMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

250. ORTIZ; LIZETTE, 07M1 0104690, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

251. PALACIOS; JAVIER, et al., 06M1 0200159, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

252. PARKER; EDWARD, et al., 06M1 0195396, 8/27/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

253. PAVLICK; ROBERT J, 06M1 0202248, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

254. PERELMAN; SVETLANA, et al., 07M1 0148361, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

255. PERELMAN,LEV, 07M1148361, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

256. PERELMAN,SVETLANA, 07M1148361, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

257. PEREZ; MONICA A, 06M1 0183867, 6/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP        ARROW FINANCIAL  ...

258. PERKINS; MONIQUE S, et al., 06M1 0187491, 6/13/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORPORATION        ARROW FINANCIAL  ...

259. PETERSON,MICHAEL N, 07SC727, SMALL CLAIMS JUDGMENT, 07/31/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** GROUP

260. PHALEN;BRAD M, 06SC 0002590, 5/8/2007, JUDGMENT, LASALLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

261. PHAM; MINH TU N, 07M1 0118809, 4/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

262. PHIPPS; SHANNON, 06M1 0199543, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

263. POTTHOFF; DIANE C, 07M1 0105799, 9/6/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

264. PRYTIKIN; MORTON, 07M1 0105168, 6/21/2007, GARNISHMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

265. REIMAN;CHERYL, 06SC 0005792, 4/3/2007, JUDGMENT, KANE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

266. REYNOLDS,MICHAEL S, 07SC692, SMALL CLAIMS JUDGMENT, 06/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

267. RIOS;FRANCISCO, 07SC 0001481, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

268. RIOS,FRANCISCO, 07SC1481, SMALL CLAIMS JUDGMENT, 05/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

269. RIVERA; CAROLYN, et al., 06M1 0199983, 10/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

270. ROBINSON;HAROLD E, 07SC 0003287, 6/1/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

271. ROBINSON; DONNA R, 06M1 0198212, 10/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

272. ROBINSON,HAROLD E, 07SC003287, SMALL CLAIMS JUDGMENT, 04/23/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

273. RODRIGUEZ; MARIANO, 07M1 0103105, 5/10/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

274. RODRIGUEZ,MARIANO, 07M1103105, CIVIL JUDGMENT, 05/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

275. ROE;KIMBERLY D, 07SC 0002024, 4/26/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

276. ROSENDO; LILIA, 06M1 0184521, 4/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
... BANK       SERVICE MERCHANDISE       **HAWKER FINANCIAL** CORPORATION

277. ROSENTHAL; JULIE, 06M1 0202496, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

278. RUDD;DENISE J, 07SC 0002698, 6/11/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

279. RUFFIN; RUTHIE F, et al., 07M1 0145558, 6/25/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

280. RUFFIN,RUTHIE F, 07M1145558, CIVIL JUDGMENT, 06/25/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

281. RUFUS; FREEMAN S, 07M1 0148343, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

282. RUFUS,FREEMAN S, 07M1148343, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

283. RUSSELL; ELIZABET A., et al., 06SC 0007372, 4/20/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

284. RUSSELL,JIMMY J, 07SC690, SMALL CLAIMS JUDGMENT, 06/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

285. RUSTOM;MOHAMED K, 06SC 0003722, 7/11/2007, JUDGMENT, PEORIA COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

286. SALGADO; MONICA E, et al., 07M1 0105976, 5/15/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

287. SALGADO,MONICA E, 07M1105976, CIVIL JUDGMENT, 05/15/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

288. SALLEY; WILLIE E, 07M1 0104014, 4/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

289. SALLEY,WILLIE E, 07M1104014, CIVIL JUDGMENT, 04/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

290. SANCHEZ; MARIA, 06M1 0199659, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

291. SANDERS;MARIAN, 07SC 0000592, 7/16/2007, JUDGMENT, VERMILION COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

292. SANTOS; JUAN, 06M1 0198244, 6/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

293. SCHMITT; KATHLEEN, 06SC 0007370, 4/9/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

294. SCHRANZ;FRANK B, 07SC 0001614, 4/16/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

295. SCHRANZ,FRANK B, 07SC1614, SMALL CLAIMS JUDGMENT, 04/16/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

296. SCRUGGS,WYATT A, 07SC145, SMALL CLAIMS JUDGMENT, 06/12/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

297. SHELTON; DAVID A, 07M1 0148344, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

298. SHELTON,DAVID A, 07M1148344, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

299. SHINNEMAN;CHARLOTTE L, et al., 06SC 0008257, 4/9/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

300. SIANO; RALPH S, 06M1 0199967, 10/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

301. SLAUGHTER,BARBARA, 07M1114842, CIVIL JUDGMENT, 04/02/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

302. SMITH,TAMEKA L (aka), 07SC2674, SMALL CLAIMS JUDGMENT, 07/05/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

303. SOUTHSIDE TRUST & SAVINGS BANK OF PEORIA v. NORRIS;LOIS A, et al., 07CH 0000410, 8/3/2007,
FORECLOSURE ACTION - Mortgage, PEORIA COUNTY, ILLINOIS
... PORTFOLIO SERVICES LLC       **HAWKER FINANCIAL** CORP

304. STARCEVICH;CONNIE L, 07SC 0000050, 4/17/2007, JUDGMENT, TAZEWELL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

305. STANDARD;NANCY, 07SC 0000414, 5/21/2007, JUDGMENT, WHITESIDE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

306. STANDARD,NANCY, 07SC414, SMALL CLAIMS JUDGMENT, 05/21/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

307. STEINMILLER;MICHAEL J, 07SC 0002623, 5/7/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

308. STIFLE,PATRICIA M, 07SC001146, CIVIL DISMISSAL, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION
06/11/2007

309. STUCKEY,DOROTHY, 07M1105387, CIVIL JUDGMENT, 05/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

310. SWAN;TIMOTHY, 07SC 0001929, 6/19/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

311. SWAN,TIMOTHY, 07SC1929, SMALL CLAIMS JUDGMENT, 06/19/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPO

312. SWIATKIEWICZ,MARY J, 07SC003441, SMALL CLAIMS JUDGMENT, 04/30/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

313. SZCZEPKOWSKI; COLLEEN, 06SC 0007397, 4/20/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP.

314. TANNER,TRACY L, 07SC150, SMALL CLAIMS JUDGMENT, 04/09/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

315. TERRELL,DEBORAH D, 07SC2448, SMALL CLAIMS JUDGMENT, 06/20/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

316. THOMAS; CAROL, 07M1 0113658, 4/2/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

317. THOMAS,CAROL, 07M1113658, CIVIL JUDGMENT, 04/02/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

318. THOMPSON; DRAVON, et al., 06M1 0198821, 4/3/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

319. THOMPSON,DRAVON, 06M1198821, CIVIL JUDGMENT, 04/03/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

320. THORNTON; ANITA L, et al., 06M1 0200162, 10/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

321. THURMOND; LARRY J, 06M1 0200477, 10/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

322. TIMMONS,NICOLE L, 07SC178, SMALL CLAIMS JUDGMENT, 06/12/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

323. TOLIVER; JOVONDRA, et al., 07M1 0147914, 8/30/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

324. TOMASINO; MICHAEL J, 07M1 0147814, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

325. TOMASINO,MICHAEL J, 07M1147814, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

326. TORREZ; BOB, 07M1 0143213, 6/19/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

327. TOSKA;LUMMI R, 07SR 0000070, 6/29/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

328. TUCKER;DEBRA M, 07SC 0002601, 5/22/2007, JUDGMENT, LAKE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

329. TURNER; CLARA, 07M1 0147825, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

330. TURNER,CLARA, 07M1147825, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

331. TURNER; QUINTIN L, et al., 06M1 0203585, 8/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL**

332. UWAIFO; JAMES O, 07M1 0141228, 6/18/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

333. UWAIFO,JAMES O, 07M1141228, CIVIL JUDGMENT, 06/18/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

334. VALENCIA; EMILIANO, 07M1 0147890, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

335. VASILOPOULOS; JAMES, et al., 06M1 0199511, 4/5/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

336. VASILOPOULOS,JAMES, 06M1199511, CIVIL JUDGMENT, 04/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

337. VELAZQUEZ; MARY G, et al., 07M1 0104977, 8/27/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

338. VINCENT,ANTONIA M, 2007SC1305, SMALL CLAIMS JUDGMENT, 06/22/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

339. WALKER;CAMILLA J, 07SC 0000818, 5/11/2007, JUDGMENT, CHAMPAIGN COUNTY, ILLINOIS
**HAWKER FINANCIAL**

340. WALKER,CAMILLA J, 07SC818, SMALL CLAIMS JUDGMENT, 05/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

341. WALLACE; BEVERLY A, 06M1 0200269, 10/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

342. WALLS;CHRISTY A, 07SC 0000364, 6/20/2007, JUDGMENT, GRUNDY COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

343. WARD;DEVORIS M, 07SC 0002700, 6/11/2007, JUDGMENT, ST. CLAIR COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

344. WEBB; PHILLIP J, 06M1 0200077, 10/9/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

345. Wells Fargo Bank v. Brown;Toby, et al., 07CH 0019546, 7/24/2007, FORECLOSURE ACTION - Mortgage, COOK COUNTY, ILLINOIS
Brown;Toby          **Hawker Finance** Corp

346. WILEY; ANTHONY K, 07M1 0100729, 10/16/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL DISTRICT
**HAWKER; FINANCIAL** CORP

347. WILLIAMS,EMMA W, 07SC2447, SMALL CLAIMS JUDGMENT, 06/20/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

348. WILLIAMS; JERRY S, 06M1 0202568, 10/11/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST
MUNICIPAL DISTRICT
**HAWKER FINANCIAL** CORP

349. WILSON;KEITH B, 07SC 0002735, 5/10/2007, JUDGMENT, DUPAGE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

350. WILSON,KEITH B, 07SC2735, SMALL CLAIMS JUDGMENT, 05/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

351. WINFREY;TAZANIA B, et al., 06SC 0008258, 7/16/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

352. WOODS; GREGG, 07M1 0147927, 6/28/2007, JUDGMENT, COOK COUNTY, ILLINOIS - 1ST MUNICIPAL
DISTRICT
**HAWKER FINANCIAL** CORP

353. WOODS,GREGG, 07M1147927, CIVIL JUDGMENT, 06/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

354. WYATT,CHARLES E, 07SC180, SMALL CLAIMS JUDGMENT, 05/30/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

355. YASAK;JOANN, 07SC 0001764, 6/5/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

356. YASAK,JOANN, 07SC1764, SMALL CLAIMS JUDGMENT, 06/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORPORATION

357. YOUNG;DAVID J, 07SC 0000290, 5/23/2007, JUDGMENT, OGLE COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

358. ZAYYAD;ATYEH H, 06SC 0008261, 4/9/2007, JUDGMENT, WILL COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

359. ZIMMERMAN,SANDRA S, 07SC146, SMALL CLAIMS JUDGMENT, 05/14/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

360. ZIMMERMAN;SANDRA S, 07SC 0000146, 5/14/2007, JUDGMENT, MCHENRY COUNTY, ILLINOIS
**HAWKER FINANCIAL** CORP

361. 07SC1479, 07SC 0001479, 5/22/2007, JUDGMENT, WINNEBAGO COUNTY, WISCONSIN
**HAWKER FINANCIAL** CORP

362. PARKER,EDWARD, 06M1195396, CIVIL JUDGMENT, 08/27/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

363. DANIELS,CHANDA D, 06M1197475, CIVIL JUDGMENT, 09/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

364. SANTOS,JUAN, 06M1198244, CIVIL JUDGMENT, 06/05/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

365. AGUILAR,KELLY L, 06M1199278, CIVIL JUDGMENT, 09/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

366. MILLER,JUANITA S, 06M1202110, CIVIL JUDGMENT, 08/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

367. ADAMS,KATIE M, 06M1203323, CIVIL JUDGMENT, 08/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

368. TURNER,QUINTIN L, 06M1203585, CIVIL JUDGMENT, 08/28/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

369. MURPHY,JOHN D, 06M1203748, CIVIL JUDGMENT, 08/27/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

370. DUNBAR,EDGAR III, 07M1105876, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

371. GALLEGOSRAWLES,SONYA M, 06SC651, SMALL CLAIMS JUDGMENT, 05/30/2007, IL JUDGMENTS
AND LIENS
**HAWKER FINANCIAL** CORP

372. MELCHER,JAMES A, 07AR240, CIVIL JUDGMENT, 05/15/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

373. PHALEN,BRAD M, 06SC002590, SMALL CLAIMS JUDGMENT RELEASE, 05/08/2007, IL JUDGMENTS
AND LIENS
**HAWKER FINANCIAL** CORP
07/31/2007

374. TARASIUK,ANGELO, 07M1103985, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

375. RICCIARELLI,GARY A, 07M1104003, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

376. CASTRO,VICENTE, 07M1104017, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

377. DRIMMON,ALLENE D, 07M1104578, CIVIL JUDGMENT, 09/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

378. ORTIZ,LIZETTE, 07M1104690, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

379. SANDERS,LYNDA, 07M1104692, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

380. MYKYTSEI,NATALIE S, 07M1104701, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

381. VELAZQUEZ,MARY G, 07M1104977, CIVIL JUDGMENT, 08/27/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

382. BYRD,ADRIAN L, 07M1105153, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

383. MATARIYEH,ISSA A, 07M1105154, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

384. BROWN,DELORIS, 07M1105406, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

385. POTTHOFF,DIANE C, 07M1105799, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

386. ROBERSON,JERRY R, 07M1105824, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

387. GLOVER,STANLEY, 07M1105848, CIVIL JUDGMENT, 09/06/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

388. JOHNSON,KIRSTEN, 07M1106310, CIVIL JUDGMENT, 09/13/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

389. WALLS,CHRISTY A, 07SC364, SMALL CLAIMS JUDGMENT, 06/20/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

390. HOWE,MIKE G, 07SC367, SMALL CLAIMS JUDGMENT, 06/20/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

391. BOWYER,ANGELA M, 06SC002403, SMALL CLAIMS JUDGMENT, 07/10/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

392. KUTA,JOHN J, 06SC002403, SMALL CLAIMS JUDGMENT, 07/10/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

393. JOHNSON,KAREN M, 06M1196513, CIVIL JUDGMENT, 07/23/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

394. JACKSON,MARZETTE, 07M1104682, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** C

395. HERRON,ALBERT P, 07M1105181, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

396. HAYNES,REGINA L, 07M1105791, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

397. JAGELAVICIUS,SAULI, 07M1105831, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

398. JONES,LORINE, 07M1105849, CIVIL JUDGMENT, 08/14/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL**

399. RUSTOM,MOHAMED K, 06SC3722, SMALL CLAIMS JUDGMENT, 07/11/2007, IL JUDGMENTS AND
LIENS
**HAWKER FINANCIAL** CORP

400. FORD,ADRIENNE P, 07SC2583, SMALL CLAIMS JUDGMENT, 06/04/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

401. MEADE,TINA C, 07SC2585, SMALL CLAIMS JUDGMENT, 06/04/2007, IL JUDGMENTS AND LIENS

**HAWKER FINANCIAL** CORP

402. HOLMAN,KENNETH G, 07SC2694, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

403. EARL,STEPHANIE, 07SC2695, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

404. KINDARD,ANGELA, 07SC2697, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

405. RUDD,DENISE J, 07SC2698, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

406. WARD,DEVORIS M, 07SC2700, SMALL CLAIMS JUDGMENT, 06/11/2007, IL JUDGMENTS AND LIENS
**HAWKER FINANCIAL** CORP

1210V5

********** Print Completed **********

Time of Request: Tuesday, November 13, 2007  11:13:15 EST

Print Number:   1821:59390016
Number of Lines: 2694
Number of Pages:

Send To:  EDELMAN, DAN
          EDELMAN COMBS & LATTURNER
          120 S LA SALLE ST FL 18
          CHICAGO, IL 60603-3593