**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TARA F. BALDRIDGE, <br> formerly known as <br> TARA F. OWENS <br> on behalf of herself and <br> the classes defined herein, <br><br> Plaintiff, <br><br> vs. <br><br> PALISADES ACQUISITION XVI, LLC, and <br> BLATT, HASENMILLER, LEIBSKER & <br> MOORE, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 07 C 6397 <br><br> Judge Pallmeyer |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

I.  **PALISADES AND OTHER DEBT COLLECTORS HAVE REPEATEDLY BEEN CAUGHT SUING ON DEBTS TO WHICH THEY DO NOT HAVE TITLE.**

This action alleges that a debt buyer, Palisades Acquisition XVI, LLC, and its attorneys, Blatt, conducted collection litigation under the name of an unrelated entity, Hawker Financial, and lied about the relationship between Palisades and Hawker.

Some explanation is necessary in order to show why a debt buyer would engage in such conduct. Recently, courts have noted a disturbing trend in which debt purchasers and collectors file large volumes of collection lawsuits in the names of entities that do not own the purported debts and attempt to hide the facts. In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011 (N.D.Ohio, Oct. 31, 2007). In the Ohio cases, foreclosure complaints alleged that the named plaintiffs were the holders and owners of the notes and mortgages, but they were not the original payees and there was nothing showing that the plaintiffs owned the notes and mortgages at the time suit was filed. Dismissing the cases, the court commented (*8-9):

> There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit -- to the contrary , they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

Subsequently, dozens of other mortgage cases were thrown out or had show cause orders entered for the same reason. In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio Nov. 27, 2007); In re Foreclosure Cases, 3:07CV043 and 19 others, 2007 U.S. Dist. LEXIS 84569 (S.D.Ohio., Nov. 15, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms,

3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D.Ohio., Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D.Ohio., Nov. 21, 2007); see Deutsche Bank National Trust Co. v. Castellanos, 277/07, New York Law Journal, Jan. 24, 2008 (Kings Co., N.Y., Sup. Ct., decided Jan. 14, 2008)(Justice Arthur M. Schack ) (Appendix E).[1]

Significantly, the entities which have been caught filing collection lawsuits without provable title to the debts include an affiliate of defendant Palisades Acquisition XVI, LLC.  In Palisades Collection LLC v. Haque, 2006 N.Y. Misc. LEXIS 4036; 235 N.Y.L.J. 71 (Civ. Ct. Queens Co., April 13, 2006) (Appendix F), judgment was entered against Palisades in a collection case because it could not prove it owned any claim against the putative debtor.

> Plaintiff's witness, Joanne Bergman testified that she is employed by plaintiff as its vice-president of legal affairs and is the custodian of plaintiff's books and records. . . . Ms. Bergman testified that plaintiff is authorized to perform any and all acts relating to certain accounts assigned to plaintiff by AT&T Wireless pursuant to a limited power of attorney and a bill of sale and assignment of benefits. These two documents, both dated July 2004, were admitted into evidence as plaintiff's Exhibit 1A and 1B. These documents, however, name, as the assignee, an entity which is a Delaware limited liability company, not a New Jersey Corporation, as this plaintiff alleges itself to be. Nor do the documents contain an indication that consideration was paid for the assignment and neither document is executed by plaintiff as the assignee. Further the assignment refers to a "Purchase and Sale Agreement" and indicates that an "Account Schedule" is attached to that agreement. Plaintiff did not seek to introduce the "Purchase and Sale Agreement" with its annexed schedule into evidence.
>
> In contrast to the wording of the assignment which references the "Purchase and Sale Agreement" and its annexed schedule of accounts, the witness testified that the purchased accounts came to plaintiff by electronic transmission. Ms. Bergman testified credibly that the electronic statements were received on December 13, 2005. Ms. Bergman testified that defendant's account was included in those purchased by plaintiff. Plaintiff then sought to introduce into evidence a document, dated January 9, 2006, that the witness testified was the hard copy of the account summary generated by AT&T Wireless and electronically sent to plaintiff pertaining to this defendant. The witness testified that plaintiff did not have copies of any statements from AT&T Wireless that were allegedly sent to defendant. . . .
>
> Further, in light of the dearth of evidence presented at trial regarding the assignment and the infirmities therein, plaintiff did not prove by a preponderance of the evidence that defendant's account was in fact assigned to plaintiff. . . .

Similarly, in Palisades Collection, LLC  v. Gonzalez,  10 Misc. 3d 1058A; 809 N.Y.S.2d 482

---

[1]  Appendices A-D are attached to the complaint.

(Civ.Ct. N.Y.Co. 2005), Palisades was unable to prove that it owned any claim against the putative debtor:

> . . . Ms. Bergmann claims that plaintiff is entitled to sue because of an assignment to it from AT&T. However, she does not attach a copy of the alleged assignment. In the absence of the document on which her statement is based, her statement is of no probative value [citations]. Consequently, Ms. Bergmann has failed to establish that plaintiff has the right to collect this debt.

These courts specifically found insufficient as proof of ownership testimony such as the affidavit of Beverly Berry quoted at Def.Mem., pp. 2-3; such testimony purports to describe the content of written documents (assignment, purchase agreements, etc.) prepared by others without introducing the documents, and thus is both hearsay and violative of the original documents (best evidence) rule.

In some of these abusive collection cases, it was ultimately proved that the putative debtors did not in fact owe the putative creditor anything. In 2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in Illinois. The following is from a press release issued by the FTC in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC. . . .  (http://www.ftc.gov/opa/2004/12/camco.htm)

In light of the prior cases in which a Palisades entity was unable to prove title to the debts it sued upon, and the fact that the false statements complained of in this case served to cover up and conceal precisely such a defect, defendants' creative attempts to portray this case as involving an innocent mistake through the suggestion of facts not in the complaint are meritless.

3

## II.    FACTS IN THIS CASE

Defendant Palisades Acquisition XVI, LLC is a limited liability company with offices at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632.  It is a wholly-owned subsidiary of Asta Funding, Inc., a public corporation.  (Cmplt., ¶5) (Palisades Collection, LLC is another such subsidiary.)  It is engaged in the business of acquiring, holding and enforcing charged-off consumer debts.  (Cmplt., ¶6) It has paid an average of less than 10 cents on the dollar for the debts it purchases.  (Cmplt., ¶7) It is a plaintiff in more than 100 collection lawsuits pending in Illinois courts.  (Cmplt., ¶8) (Indeed, a Lexis search for Chicago area filings under "Palisades Acquisition XVI" turns up over 400 cases.)

On May 27, 2007,  Ms. Baldridge was served, under her former name of Ms. Owens, with a Cook County Circuit Court summons and complaint in case 06 M1 196515  that represented that she owed an alleged debt to Hawker Financial Corp., of just under $3,000.  (Cmplt., ¶¶19-20)  The debt was *supposedly* based on a credit card issued by Providian Bank, which assigned it to "GA Financial Trust," which assigned it to "Arrow Financial Services," which assigned it to Hawker.  (Cmplt., ¶16) Contrary to the statement at Def.Mem., p. 3,  at no time has Ms. Baldridge conceded that the debt is hers or that this chain of title is correct.  Furthermore, any such debt would have been very old.  Plaintiff last used the name "Owens," under which she was sued, over 10 years previously.  (Cmplt., ¶18)

In truth and in fact, on May 27, 2007, Hawker Financial Corp. no longer had any interest in the purported debt.  (Cmplt., ¶21)  Hawker had no interest in the debt as of March 5, 2007.  On February 5, 2007, Palisades Acquisition XV, LLC, entered into a Purchase and Sale Agreement ("Portfolio Purchase Agreement") with Great Seneca Financial Corporation, Platinum Financial Services Corporation, Monarch Capital Corporation, Colonial Credit Corporation, Centurion Capital Corporation, Sage Financial Corporation and Hawker Financial Corporation (collectively, the "Sellers"), under which Palisades Acquisition XV, LLC agreed to acquire a portfolio of approximately $6.9 billion in face value receivables ("Portfolio")

4

for a purchase price of $300 million plus 20% of any future Net Payments (as defined in the Portfolio Purchase Agreement) received by the Company after the Company has received Net Payments equal to 150% of the purchase price plus our cost of funds. The Portfolio (now owned by Palisades Acquisition XVI, LLC ("Palisades XVI")) predominantly consists of credit card accounts and included some accounts in collection litigation and accounts as to which the Sellers have been awarded judgments. (Report filed by Asta Funding, Inc., parent of Palisades Acquisition XVI, LLC, on SEC Form S-8, dated April 18, 2007, original page 8.) (Cmplt., ¶¶22-23 and App. B) The transaction did not take effect until a month later, on March 5, 2007. (Cmplt., ¶25)

The purchase price was 4.3 cents on the dollar plus the future payments.

The Portfolio Purchase Agreement expressly recognized (7.1) that "Buyer shall not misrepresent, mislead or otherwise fail to adequately disclose its ownership of the Accounts." Clearly, both buyer and seller realized that the accounts that were the subject of lawsuits had to be transferred of record, and the agreement provided a month in which to effectuate this.

The purported account that was the subject of the lawsuit against plaintiff was one of the accounts in the Portfolio. (Cmplt., ¶26)

However, Palisades continued pursuing legal action against plaintiff in the name of Hawker Financial Corp. until August 30, 2007, although Hawker had no interest in any purported claim against plaintiff as of March 5, 2007. (Cmplt., ¶25) On August 30, 2007, one day after Ms. Baldridge's present counsel appeared in the state court case, a motion was filed to "correct the misnomer" and change the name of the plaintiff to Palisades Acquisition XVI, LLC. That motion was captioned Hawker Financial Corp. v. Owens. (Cmplt., ¶29) The motion was itself a misrepresentation because there was no "misnomer" but a sale of the claimed debt between two unrelated entities. (Cmplt., ¶30)

By falsely claiming a misnomer, defendants avoided flagging the obvious

question, which has proved troublesome to multiple courts (see §I) of whether the Palisades entity in fact owned the debt and could prove title to it.  That is, if defendants produced an assignment from Hawker to Palisades, that would highlight the absence of similar documentation leading from the original creditor through several mesne transfers to Hawker.  In addition, the chain of title would likely show that the claimed debt, if it is Ms. Baldridge's at all, allegedly became delinquent more than five years previously and was barred by limitations.  <u>Parkis v. Arrow Financial Services</u>, 07 C 410, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill., Jan. 8, 2008).

That the reason was not benign is shown by the fact that Palisades Acquisition XVI, LLC and its collection lawyers not only continued pursuing lawsuits in the name of Hawker and other selling entities listed in Cmplt., <u>Appendix B</u>  but filed ***new lawsuits*** in the name of such entities, all with respect to debts not owned by them, between March 6, 2007 and at least May 15, 2007.  (Cmplt., ¶28) This fact belies the suggestion that defendants were just a bit slow in properly placing the change of ownership of record.  Rather, it indicates that defendants were willing to operate under a false name as long as the consumers defaulted and did not retain counsel.

That the reason was not benign is also shown by the fact that normally when the Palisades organization acquires an account, "[w]e or our third-party collection agencies or attorneys send notification letters to obligors of each acquired account explaining, among other matters, our new ownership . . . ." (Report on SEC Form 10-K of Palisades' parent Asta Funding, Inc., for year ending Dec. 31, 2007, original page 8)  There is no apparent reason that such documents were not generated in this case.  Plaintiff does not contend that the sale had to be placed of record "immediately," as defendant suggests.  But there was no reason not to clearly and unequivocally inform consumers of the transfer within the same time frame that Palisades normally does so, which appears to be about six days, not six months.

Given Palisades' normal practice, the prior decisions finding that Palisades entities could not prove title to debts, and the fact that the purchase agreement expressly addressed the

need to provide notice, the matter most certainly cannot be assumed to be an oversight.

Defendants claim (Def.Mem., p. 3) an order of June 28, 2007 setting a court date has "Palisades Acquisition XVI LLC" in the caption. Nothing indicates that this was given to Ms. Baldridge. Even if it was, it would appear to the unsophisticated consumer to be a mistake committed by a lawyer who may have 100 or more cases on the court call. The only reason the issue came to light was because Ms. Baldridge retained her present counsel. No unsophisticated consumer can be expected to monitor transactions in the collection industry or run a database search to retrieve SEC filings that mention (but are not filed in the name of) the party suing them. The appropriate standard of notice is established by Palisades' normal practice.

### III.   PROSECUTING LITIGATION UNDER A FALSE NAME AND MAKING MISREPRESENTATIONS TO COVER UP TITLE DEFECTS VIOLATES THE FDCPA

The FDCPA expressly prohibits the type of practice involved here. In addition to the general prohibition of "any false, deceptive, or misleading representation or means in connection with the collection of any debt", 15 U.S.C. §1692e preface, the FDCPA singles out the use by a debt collector "of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." (15 U.S.C. §1692e(14)) For Palisades to conduct litigation under the name of Hawker, an unrelated entity, for months without clear and prompt disclosure of the sale of the debt is a patent violation of §1692e(14).

Furthermore, the Seventh Circuit has expressly held that a debt collector's false statement concerning its relation to the debt is actionable under the general prohibition of false and misleading statements. <u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469, 472 (7th Cir.2000), is dispositive. The Seventh Circuit there held that a debt collection plaintiff which described itself as a subrogee when it was not a subrogee violated the FDCPA:

> Having concluded that Check Brokerage was not subrogated to Ayerco's rights, little further need be said. Check Brokerage's allegation in its state court complaint that it was "subrogated" to Ayerco's rights gave a false impression as to the legal status it enjoyed. The representation was, as the district court found, a false representation in an attempt to collect the debt, in violation of 15 U.S.C. § 1692e(2) and (10). Section 1692e applies even when a false representation was

unintentional. (233 F.3d at 472.)

Other decisions hold that any misrepresentation by a debt collector is a violation of the FDCPA. Foster v. Velocity Investment, LLC, 07 C 0824 and 07 C 2989, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Randolph v. IMBS, Inc., 368 F.3d 726, 728-30 (7th Cir. 2003).

### IV.   DEFENDANTS' EXCUSES ARE BASED ON FACTS OUTSIDE THE RECORD AND LACK MERIT

Defendants suggest (Def.Mem., pp. 5-6) that all we have is a lack of "perfection" in identifying the creditor, citing cases in which "Capital One" was used in lieu of "Capital One Bank" and the like. But here the name used ("Hawker Financial") is not a similar to the proper name ("Palisades Acquisition"), or a trade name used by the correct entity, and Hawker did not authorize the use of the name. On the contrary, defendants knew the use of Hawker was improper, for the purchase agreement expressly forbids Palisades to use the name of the seller.

Furthermore, while there is no apparent advantage to a debt collector from using the trade name "Capital One" instead of the corporate name "Capital One Bank" to designate an original creditor, there is an obvious reason why a debt collector which has been judicially determined to be unable to prove proper title to debts would not want to flag the issue by openly announcing another change in title, particularly where the transferor itself claims to be the third assignee of the debt and no prior assignments are attached to the complaint, which is required by Illinois law, Candice Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996). In this regard, if the consumer fails to appear in response to a Cook County Circuit Court complaint seeking an amount certain, a judgment for that amount is entered on a ministerial basis, generally by a deputy clerk who literally has a cartful of files to deal with, without anyone paying a great deal of attention to what documentation exists or anything other than the nonappearance of the defendant and that a sum certain is claimed. However, if a motion is filed, it is presented to a judge. Other judges have *sua sponte* raised questions about the standing of Palisades entities and other debt buyers and collectors, often finding their proof of standing to be insufficient, Palisades

Collection, LLC v. Gonzalez, 10 Misc. 3d 1058A; 809 N.Y.S.2d 482 (Civ.Ct. N.Y.Co. 2005), or internally inconsistent and of questionable veracity, Deutsche Bank National Trust Co. v. Castellanos, 277/07, New York Law Journal, Jan. 24, 2008 (Kings Co., N.Y., Sup. Ct., decided Jan. 14, 2008) (Justice Arthur M. Schack ) (Appendix E). Given its past experiences and decisions which it and other debt buyers have been getting, Palisades clearly does not want judges thinking about the chain of title to its debts, or lack thereof.

Nor is this a "challenge to the way a creditor is described." (Def.Mem., p. 5) Again, plaintiff is not complaining about "Capital One" instead of "Capital One Bank" or "AT&T" instead of "American Telephone & Telegraph Company." Palisades is an entity entirely unrelated to Hawker. Hawker's name was used by Palisades in contravention of an express prohibition in the purchase agreement, in violation of an express prohibition in the FDCPA, and under circumstances that had the effect and purpose of committing a fraud.

Equally inapposite is defendants' extensive discussion (Def.Mem., pp. 7-8) of 735 ILCS 5/2-401, the Illinois Code of Civil Procedure section dealing with "misnomers." The sale of the claim sued upon does not create a "misnomer." A "misnomer" exists when the correct party is joined but it is inaccurately named, e.g., someone sues "AT&T" as opposed to "American Telephone & Telegraph Company" but serves an officer of the correct entity. Vaughn v. Speaker, 126 Ill. 2d 150, 533 N.E.2d 885 (1988); Blum v. Lawent, 02 C 5596, 2003 U.S. Dist. LEXIS 16050, *23-25 (N.D.Ill., Sept. 9, 2003). If the ownership of the cause of action changes in mid-litigation, it is certainly proper to make the new owner the plaintiff and drop the former owner, 735 ILCS 5/2-407. However, that is not a "misnomer," and there is no basis for calling it such.

It is a misrepresentation, and a violation of the FDCPA, to describe the relationship between Palisades and Hawker as a "misnomer." It is not, and the effect and likely purpose of the misstatement is to avoid highlighting an outcome-determinative problem with the chain of title that courts have previously found to exist.

Finally, defendants' assertion that Ms. Baldridge is requesting review of state court

9

rulings is inaccurate.  Ms. Baldridge is not challenging any rulings by the state court.  She cannot because (a) there is no question but that the Palisades entity should have been made the plaintiff in lieu of Hawker and (b) Ms. Baldridge  prevailed in the state court  – the case was dismissed  – and cannot "move for reconsideration of the court's order" or otherwise challenge prior orders.

## V.     BELER DOES NOT HELP DEFENDANTS

Defendant cites Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470 (7th Cir. 2007), for the proposition that "the way the creditor was described" in a state court pleading is not a matter that the FDCPA is concerned with.  Beler does not support defendant's argument.  For one thing, there was no question in Beler about lawsuits being maintained in the name of someone who does not own the claims.  The proper plaintiff was present, and the only issue was a confusing (albeit not false) explanation of the relationship between the issuer and servicer of a private label credit card (Monogram Bank and GE Capital) and the retailer whose name appears on the private label credit card (JC Penney).  The Seventh Circuit held that contents of pleadings should be governed by otherwise applicable pleading rules, not the "unsophisticated consumer" standard.  It specifically distinguished cases where there are outright false statements in collection pleadings, suggesting that pleadings are not exempt from the FDCPA's "rule against trickery," *i.e.*, § 1692e's prohibition against false, deceptive, or misleading representations or means.

Finally, Beler was decided on summary judgment, and concluded on the basis of a factual record that any confusion in the description was "harmless rather than an effort to lead anyone astray."  (480 F.3d at 473)  It does not follow that a Rule 12 motion can be granted when the complaint alleges a flat-out misrepresentation and there are obvious reasons why Palisades would want to lie about the chain of title.

Later decisions make absolutely clear that deliberate false statements in pleadings are not immune from FDCPA scrutiny.  Chavez v. Bowman, Heintz, Boscia & Vician, 07 C 0670, 2007 U.S. Dist. LEXIS 61936 (N.D.Ill. Aug. 22, 2007); Foster v. Velocity Investment,

LLC, 07 C 0824 and 07 C 2989, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007). This reaffirms prior law, which holds that false representations in judicial proceedings can, or do, violate the FDCPA. Gearing v. Check Brokerage Corp., supra, 233 F.3d 469, 472 (7th Cir 2000) (complaint); Todd v. Weltman Weinberg & Reis Co., L.P.A., 434 F.3d 432 (6th Cir. 2006) (affidavit); Sayyed v. Wolpoff & Abramson, 485 F.3d 226 (4th Cir. 2007) (interrogatories); Miller v. Wolpoff & Abramson, 321 F.3d 292 (2nd Cir. 2003) (complaint); Lee v. Javitch, Block & Rathbone, LLP, 484 F. Supp. 2d 816 (S.D. Ohio 2007) (consumer stated a viable FDCPA claim for false statement in affidavit attached to state court collection complaint); Owens v. Howe, 04cv152, 2004 U.S. Dist. LEXIS 22728, *47 (N.D. Ind. 2004) (complaint); Tomas v. Bass & Moglowski, P.C., 99-C-277-S, 1999 U.S. Dist. LEXIS 21533 (W.D. Wisc. June 29, 1999) (summons and complaint); Jacquez v. Diem Corp., CV-02-0500-PHX-JAT, 2003 U.S. Dist. LEXIS 8333 (D. Ariz. Feb. 20, 2003) (writ of garnishment). See generally, Jenkins v. Centurion Capital Corp., 07 C 3838, 2007 U.S. Dist. LEXIS 85218 (N.D.Ill., Nov. 15, 2007).

The FDCPA has been amended to specify limited circumstances under which pleadings are *not* covered by certain provisions. By reasonable implication, there are the *only* examples. Sections 1692e(11) and 1692g(d) exempt legal pleadings from the FDCPA in two limited, specific, and clearly delineated circumstances. Section 1692e(11) provides:

> A debt collector may not use and false, deceptive, or misleading representation or means in connection with the collection of any debt. <u>Without limiting the general application of the foregoing</u>, the following conduct is a violation of this section: . . . .
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, <u>except that this paragraph shall not apply to a formal pleading made in connection with a legal action</u>. 15 U.S.C. § 1692e(11) (emphasis added).

Section 1692e plainly and unambiguously states that debt collectors "may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." The enumeration of prohibited collection activities in paragraphs (1)-(16) are not intended to be

exclusive ("Without limiting the general application of the foregoing . . . ."). Paragraph e(11) exempts pleadings from the specific and limited requirements of *"this paragraph"* (emphasis added). "This paragraph" means just what it says – paragraph e(11). "This paragraph" does not mean § 1692e, nor the FDCPA in its entirety.

Similarly, § 1692g(d) (enacted 2006) exempts pleadings from the specific, limited, and clearly delineated validation notice requirements of § 1692g(a):

> (d) Legal pleadings
>
> A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

15 U.S.C. § 1692g(d). The inescapable inference is that they <u>are</u> treated as communications for other purposes, such as §1692e.

Defendant's argument is also belied by Congress' repeal in 1986 of the exemption that had previously existed for attorneys. In repealing the exemption, Congress considered and rejected arguments that existing mechanisms for curbing lawyers' misbehavior were adequate and that application of the FDCPA to litigation would be burdensome. On the contrary, Congress expressly found that "current law does not adequately protect consumers from attorney debt collection abuses and that repeal of the attorney exemption the Fair Debt Collection Practices Act is an appropriate way to reduce the amount of this abuse." H.R. Rep. No. 405 at 7, reprinted in 1986 U.S.C.C.A.N. at 1758.

The reason state law remedies are inadequate is shown by the nature of the practice plaintiff challenges here. Palisades buys thousands of so-called zombie debts (<u>Appendix G</u>), *i.e.*, very old debts, for pennies on the dollar. Many of the debts are for modest amounts, and even though Palisades cannot prove anything, many consumers will default or pay because it is more costly to endure harassment or pay an attorney to defend themselves in court than to submit to its predatory conduct, just as the FTC found was the case with CAMCO. State law remedies are ineffective because Palisades is banking on the cases that result in default judgments – Palisades could dismiss every case in which a defense was mounted and still make enormous profits. <u>See</u>

Debt Weight, The Consumer Credit Crisis in New York City and its Impact on the Working Poor, Urban Justice Center (October 2007), discussing the similar activities of Palisades and several other debt buyers in New York (Appendix H).

No credit can be given to defendants' creative attempts to characterize the matter as one of an innocent delay in disclosure. This is simply an attempt to supply facts outside the record – and which contradict the statements in the Asta Funding SEC filings – without allowing plaintiff discovery to challenge those purported facts. Given the history of debt buyers in general and Palisades in particular of being unable to prove title to their debts, and resorting to improper and fraudulent practices to hide the fact, and given the statements in the SEC filings about prompt notification when debts are purchased by Palisades, these explanations cannot be accepted.

## VI. CONCLUSION

For the foregoing reasons, plaintiff respectfully urges the Court to deny defendants' motion to dismiss.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\19920\Pleading\Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss_Pleading.wpd

**CERTIFICATE OF SERVICE**

       I, Daniel A. Edelman, hereby certify that February 13, 2008, I filed the foregoing documents via the Court's CM/ECF system, which caused to be sent notification of such filing via electronic mail to the following parties:

David M. Schultz
dschultz@hinshawlaw.com

Jennifer W. Weller
jweller@hinshawlaw.com

Stephen D. Vernon
svernon@hinshawlaw.com

                                             s/Daniel A. Edelman
                                             Daniel A. Edelman