IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARA F. BALDRIDGE, formerly known as TARA F. OWENS, on behalf of herself and the classes defined herein,<br><br>  Plaintiff,<br><br>v.<br><br>PALISADES ACQUISITION XVI, LLC, and BLATT, HASENMILLER, LEIBSKER & MOORE, LLC,<br><br>  Defendant. | Case No.: 07 C 6397<br><br>Judge Rebecca Pallmeyer<br><br>Magistrate Judge Schenkier |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Palisades Acquisition XVI, LLC ("Palisades") and Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM") by and through their attorneys David M. Schultz and Jennifer W. Weller and for their Reply in Support of their Motion to Dismiss state as follows:

### I. INTRODUCTION

Plaintiff claims that defendants allegedly violated the FDCPA by allowing a collection complaint to remain pending in the Circuit Court of Cook County in the name of Hawker Financial Corporation after Hawker sold plaintiff's debt to Palisades. She further claims that when BHLM moved to amend the caption on August 30, 2007, defendants violated the FDCPA by characterizing the reason for the amendment as a "misnomer." Plaintiff dismisses as irrelevant the fact that at the time the complaint was filed on December 16, 2006, Hawker owned her debt, and that after the filing of the complaint, no other pleadings were drafted and filed by BHLM in the name of Hawker. Plaintiff was served on May 27, 2007 (after initial service attempts failed and BHLM had to retain a special process server) and the next document that was drafted by BHLM, an order of June 28, 2007, named Palisades Acquisition XVI, LLC as the

plaintiff. Plaintiff attempts to characterize defendants' alleged tardiness in moving to amend the complaint as nefarious and done purposely to mislead plaintiff and the court. Yet the Circuit Court record makes clear that nothing was misrepresented.

Plaintiff apparently concedes that the complaint did not need to be amended immediately. (Resp. at p.6)("Plaintiff does not contend that the sale had to be placed of record "immediately" as defendant suggests."). Plaintiff's concession illustrates the flaw with her theory. If a caption is not amended on the day of sale, there will necessarily be a period of time in which the caption does not identify the alleged current owner of the debt. Under plaintiff's theory if a complaint is pending for even one day after sale in the name of the seller of the debt, there would be an FDCPA violation. Yet, the FDCPA cannot be applied so mechanically as plaintiff concedes. Thus, the issue of how and when a complaint should be amended is an issue that should be addressed by the court in which the complaint is pending, rather than in an FDCPA class action. The appropriate way to address this issue is through amending the complaint in the court in which it is pending. Plaintiff's application of the FDCPA is completely arbitrary and is precisely the reason why the FDCPA should not be applied to second-guess state court judges on matters of procedure.

## II. ARGUMENT

### A. Plaintiff's Discussion of the Debt Buying Industry has no Relevance to her Allegations and is an Attempt to Distort the Facts of this Case

Plaintiff uses her response as a platform to attack the debt buying industry claiming that "debt purchasers and collectors file large volumes of collection lawsuits in the names of entities that do not own the purported debts and attempt to hide the facts." (Resp. at pp. 1-3). Yet in this case plaintiff admits that the collection complaint was filed in the name of the correct party-Hawker. Thus, the first three pages of plaintiff's response are drafted solely for the purpose of

2

mudslinging at the debt buying industry as a whole and are used to divert the court from the straightforward facts of the case. BHLM filed suit on behalf of Hawker Financial Corp. to collect a debt from plaintiff which Hawker owned. While BHLM was attempting to serve plaintiff with the complaint, the account was sold from Hawker to Palisades. There is nothing nefarious about what happened.

The debt buying industry and related collections serve an economic benefit to consumers, businesses and creditors and plaintiff's skewed perception of the industry should not be used as a backdrop for evaluating defendants' conduct in this case. In 2006, PriceWaterhouseCoopers released a study that it prepared for ACA International regarding the value of third-party debt collection to the U.S. Economy. It found:

> For consumers, the benefit of third-party debt collection can be seen through reduced consumer prices and greater consumer purchasing power, since consumers would likely be faced with higher prices if businesses were unable to recoup losses resulting from bad debt. This survey and analysis shows that the $39.3 billion in debt returned to creditors on a commission basis is equivalent to an average savings of $351 per American household that might have otherwise been spent had businesses been forced to raise prices to cover the unrecovered debt. (Exhibit A hereto).

The Seventh Circuit made a similar point in *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005). In *Olvera*, plaintiff argued that the Illinois Interest Act limited the interest rate that a debt buyer could accrue on defaulted credit card debt to 9% on written contracts and 5% on unwritten contracts. Thus, a consumer who defaulted on a credit card debt would actually benefit if his or her account was sold pursuant to an assignment from the original creditor to a debt buyer because a debt buyer could not accrue the same interest rate as the original creditor. In rejecting plaintiff's theory, the court stated:

> Adopting the plaintiffs' interpretation of the Illinois Interest Act would push the debt buyers out of the debt collection market and force the original creditors to do their own debt collection. Borrowers would not benefit on

average, because creditors, being deprived of the assignment option as a practical matter (the statutory rates being far below the market interest rates for delinquent borrowers), would face higher costs of collection and would pass much of the higher expense on to their customers in the form of even higher interest rates. It might be thought that assignees, since the debtors are not their customers, are more ruthless in collection than the original creditors, who might not wish to offend their customers, would be. But once a customer defaults, he is no longer a valued customer that the creditor is likely to want to coddle. And if the creditor does want to coddle his defaulting customers- maybe to reassure his other customers- he will either not assign the debt or assign it to a coddler.

There is an innocent reason that creditors can reduce their costs or increase their yield by assigning collection to other firms rather than doing it themselves. It is the same reason that most manufacturers sell to consumers through independent distributors and dealers rather than doing their own distribution. Outsourcing phases of the total production process facilitates specialization, with resulting economies. Specialists in debt collection are likely to be better at it than specialists in creating credit card debt in the first place. *Id.* at 288.

Plaintiff claims that "[r]ecently, courts have noted a disturbing trend in which debt purchasers and collectors file large volumes of collection lawsuits in the names of entities that do not own the purported debts and attempt to hide the facts." (Resp. at p.1). Yet, plaintiff does not allege that defendants violated the FDCPA by attempting to collect a debt she does not owe. Rather she discusses irrelevant and unrelated cases and FTC proceedings in an attempt to make it appear as though defendants did something wrong in this case. Plaintiff's allegations and the procedural history, however, establish that nothing was misrepresented or concealed in the state court collection action.

### B. Defendants Did Not Conceal Anything in the State Court Pleadings

While plaintiff concedes that some delay is likely or necessary in amending a collection complaint after a defaulted account is sold, she gives short shrift to the Seventh Circuit's opinion in *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). She claims it does not support defendants' position stating, "[*Beler*] specifically distinguished cases where there are outright false statements in collection pleadings, suggesting that pleadings are not

4

exempt from the FDCPA's 'rule against trickery'." (Resp. at p.10). Yet no "outright" false statement was made in this case. At the time the complaint was filed, Hawker owned plaintiff's account. The Illinois Code of Civil Procedure and case law recognize that facts or circumstances may change during the pendency of a complaint which is why amendments are to be freely allowed. 735 ILCS 5/2-401; *Thomas v. Davenport*, 196 Ill.App.3d 1042, 554 N.E.2d 604 (1st Dist. 1990). *Beler* demonstrates that the FDCPA is not violated every time a harmless mistake is made in a collection complaint.

Plaintiff admits Hawker owned her debt. While Hawker owned the debt, BHLM filed a lawsuit on its behalf. She admits that Hawker sold the account to Palisades. Nothing was hidden from plaintiff. She tries to spin the facts claiming, "[b]y falsely claiming a misnomer, defendants avoided flagging the obvious question, which has proved troublesome to multiple courts (see §I) of whether the Palisades entity in fact owned the debt and could prove title to it." (Resp. at pp.5-6). However there is no dispute that Palisades did own the debt and could prove title to it- plaintiff attaches the purchase agreement to the complaint. Moreover, plaintiff's claims do not make sense- why would Palisades wish to conceal the fact that it and not Hawker owned her debt? Plaintiff argues that Palisades would somehow benefit because it could not establish "title" to the debt. Yet the chain of title between Hawker and Palisades is absolutely clear as evidenced by the purchase agreement attached to plaintiff's complaint. Accordingly, plaintiff's insinuation in her response that she was in any way misleading as to the owner of her debt is disingenuous at best.

Plaintiff claims that "the Seventh Circuit has expressly held that a debt collector's false statement concerning its relation to the debt is actionable under the general prohibition of false and misleading statements," *citing Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th

Cir. 2000). (Resp. at p.7). *Gearing*, however, dealt with a statement in a collection letter that Check Brokerage was subrogated to Ayerco's rights when in fact it was not. In this case, Hawker owned the debt at the time suit was filed- no one made any false statements regarding ownership of the debt. The issue in this case turns on the alleged timing and reasoning for the amendment to the caption.

Further, the Seventh Circuit decisions in *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003) and *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2003) have absolutely no relevance because each case addressed the interplay between a bankruptcy discharge and collection activity. In *Randolph*, the Seventh Circuit addressed the issue of whether the Bankruptcy Code preempted the FDCPA where both statutes deal with the same subject.

Plaintiff cites *Turner* for the proposition that "any misrepresentation by a debt collector is a violation of the FDCPA." (Resp. at p.8). However, plaintiff completely misstates the holding in *Turner*. In that case, the district court initially dismissed plaintiff's complaint on the basis that defendant did not know plaintiff had filed for bankruptcy and that her debt to Pre-Paid was discharged when it send her a letter regarding the debt. The Seventh Circuit reversed and remanded on the basis that there is no intent component to Section 1692e and instructed the district court to determine whether there was a violation of the FDCPA in the letter. After the initial remand order cited by plaintiff, there was a bench trial in which the district court found there was no violation in the letter. The case was again appealed and the Seventh Circuit remanded ordering the district court to set forth a basis for its decision at trial. After a second bench trial, the district court again found that there was no violation in the letter reasoning, "the Court concludes that the March 29, 2001 collection letter sent by Defendant to Plaintiff does not violate 15 U.S.C. § 1692e of the FDCPA because it did not imply to a reasonably objective, but

6285175v1 883790

unsophisticated consumer that the debt discharged in bankruptcy was still payable." *Turner V. JVDB & Associates, Inc.*, 483 F.Supp.2d 631 (N.D.Ill. April 9, 2007)(Denlow, M). As in *Turner*, there is no FDCPA violation in this case because no false statement was made.

Plaintiff's discussion of "deliberate false statements in pleadings" and the cases cited are therefore distinguishable to the extent that they have any relevance at all. *See e.g. Foster v. Velocity Investment, LLC*, 2007 WL 2461665 (N.D.Ill. Aug. 24, 2007)(Hibbler, W.)(denial of motion to dismiss finding that allegations that an affidavit misstated the amount of the debt stated a claim under the FDCPA); *Todd v. Weltman Weinberg & Reis, Co.*, 434 F.3d 432 (6th Cir. 2006) (affiant lied in order to initiate a garnishment proceeding akin to a replevin action); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (debt collector and its attorney's complaint incorrectly alleged legal rights not actually present); *Owens v. Howe*, Case No.: 04 cv 152 (N.D.Ind.) (complaint filed after attorney was notified by plaintiff that the debt was not his and attorney never verified the status of the debt); *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir. 2003) (complaint sought to collect attorney fees not permitted by law); *Tomas v. Bass & Moglowski, P.C.*, (W.D.Wisc. 1999) (complaint sought to collect a deficiency amount that the creditor had no right to collect); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007)(court found that there was no absolute "common law litigation immunity" to the law firm's interrogatories and motion for summary judgment). The facts of this case, accordingly, similarly differ from the facts in *Blum v. Lawent*, 2004 WL 2191612 (N.D.Ill.,2004) where a small claims complaint was initiated in the name of the wrong party.

In this case, the complaint was filed in the name of the correct entity. There is no FDCPA violation with respect to the caption in the state court complaint. The pleading was appropriately amended by motion and with leave of court. There is further no FDCPA violation

based on the legal argument raised by BHLM in its motion for leave to amend. Plaintiff should not be permitted to question a legal argument raised by counsel regarding an amendment to a collection complaint's caption when she was represented by counsel and had the opportunity to objection in state court. The time to object to BHLM's motion to amend was during the pendency of the collection action- not through a FDCPA class action.

WHEREFORE, Defendants Palisades Acquisition XVI, LLC and Blatt, Hasenmiller, Leibsker & Moore, LLC respectfully request that this court grant their Motion to Dismiss Plaintiff's Complaint and for such further relief as this court deems appropriate and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

David M. Schultz
Jennifer W. Weller
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
312/704-3000
312/704-3001 – facsimile
dschultz@hinshawlaw.com
jweller@hinshawlaw.com
Firm's #90384

s/ *Jennifer W. Weller*
Jennifer W. Weller